Lininger *v.* Kromer (et al., Appellant).

Kromer *v.* Kobylarczyk, Appellant.

260

Argued November 19, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Daniel P. Stefko,* with him *James R. Miller,* and *Dickie, McCamey & Chilcote,* for appellant.

*Robert D. Douglass,* with him *Donald M. Miller, William E. Duffield, Ira B. Coldren, Jr.,* and *Miller & Cope,* and *Coldren & Coldren,* for appellees.

OPINION BY HOFFMAN, J., February 2, 1976:

Appellant, Tony Kobylarczyk, contends that the trial court erred (1) in holding that his out-of-court statement made two hours after an automobile accident was not within the res gestae exception to the hearsay rule and, therefore, was not admissible, and (2) in directing the plaintiffs either to file a remittitur or to undergo a second trial limited to the issue of damages, instead of awarding a general new trial.

The factual history of the case is not complicated. On November 6, 1968, at approximately 5:00 p.m., appellant's pick-up truck was involved in an accident with a car driven by appellee, Karen Kromer, on Route 119,

near Indiana, Pennsylvania. It is undisputed that the accident occurred at a point where the roadway was straight and level. Appellant had two passengers, his son, Robert, and a close friend, John Lininger; appellee was travelling alone. Because there were no other cars on the road, and because both of appellant's passengers were asleep at the time, the only witnesses to the incident were the two drivers.

At trial, both drivers gave their version of the events leading up to the collision. Appellant testified that he was driving on his side of the two-lane highway, that appellee approached in her lane, but that as the vehicles were about to meet, appellee's car swerved into his lane. He testified further that he attempted to move to his right, but was unable to avoid the crash. According to appellee, however, appellant approached her car in the wrong lane, and she swerved into his lane in order to avoid a head-on collision. She testified that at the moment she left her lane, appellant swerved to get back into his proper lane. Both parties agree that the accident occurred on appellant's side of the highway.

As a result of injuries he sustained in the accident, appellant's son died. The other three parties were all seriously injured. Four separate lawsuits were filed, and consolidated for trial: (1) Margaret Kobylarczyk, Administratrix of the Estate of Robert Kobylarczyk, deceased, filed suit against Karen Kromer, who joined Tony Kobylarczyk as an additional defendant; (2) Tony Kobylarczyk filed suit against Karen Kromer; (3) Karen Kromer filed suit against Tony Kobylarczyk; and (4) John Lininger filed suit against both Karen Kromer and Tony Kobylarczyk. Trial was held on March 18, 1974, and the jury found appellant liable in all four cases. Thus, the Estate of Robert Kobylarczyk recovered against appellant, as additional defendant, but not against appellee; John Lininger recovered only against appellant; and appellee recovered against appellant. Upon request by

all counsel, the court instructed the jury to award damages separately for the various elements of compensation. The actual jury verdicts were as follows:

*Margaret Kobylarczyk, Admrx:*

| | |
|---|---:|
| Bills | 1,598.25 |
| Loss of Future Earnings | 77,000.00 |
| | 78,598.25 |

*John Lininger*

| | |
|---|---:|
| Bills | 8,200.00 |
| Lost Wages | 35,616.00 |
| Pain and Suffering | 4,000.00 |
| Loss of Future Earnings | 40,284.00 |
| | 88,100.00 |

*Karen Kromer*

| | |
|---|---:|
| Bills | 16,575.80 |
| Lost Wages | 14,840.00 |
| Pain and Suffering | 9,000.00 |
| Loss of Future Earnings | 110,400.00 |
| | 150,815.80 |

Both Margaret Kobylarczyk and appellant filed motions for a new trial; John Lininger did not; Karen Kromer opposed the award of a new trial generally, but not the award of a new trial limited to damages.

The lower court upheld the jury's verdict on the issue of liability, but ruled that the verdicts were excessive because the jury failed to reduce future earnings to present worth. Consequently, the court reduced the verdicts in each case, and awarded a new trial limited to damages unless remittiturs were filed in the amount of the reduction. John Lininger did file the remittitur and the court entered judgment on the verdict as remitted. The other two verdict-winners did not file remittiturs, and the court ordered a new trial limited to damages. Tony Kobylarczyk then perfected the instant appeal. Karen Kromer submitted a brief in opposition; John Lininger and the Estate of Robert Kobylarczyk did not.

We must review all the awards, however, as Tony Kobylarczyk has appealed the lower court's order in each case.

As will be discussed in Part II of this Opinion, *infra*, the propriety of the limited grant of a new trial depends on whether any errors were committed during the course of the trial, and whether the issue of damages is intertwined with the issue of liability. Thus, Part I of this Opinion deals with the only trial error alleged by appellant—the exclusion of his out-of-court statement. Even though we conclude that the lower court acted correctly, it will still be necessary to determine whether the issue of damages in this case is sufficiently severable from the issue of liability, so that the lower court did not abuse its discretion in granting a limited new trial. This will be the focus of Part II.

## I.

After all the parties had testified, counsel for appellant in his capacity as defendant and additional defendant, called State Trooper Franklin Duddy, who had arrived on the scene about ten minutes after the accident. Appellant had previously related to the jury his account of the cause of the accident. The following colloquy occurred at trial:

"Q. All right. Did you attempt to interview either one of the operators at the scene of the accident?

"A. No sir.

"Q. And why didn't you?

"A. Miss Kromer was not in condition to be interviewed. We were occupied with the injured persons, and Mr. Kobylarczyk I talked to later.

"Q. Did you later attempt to interview either Miss Kromer or Mr. Kobylarczyk?

"A. Yes sir.

"Q. Were you successful?

"A. I interviewed Mr. Kobylarczyk at the hospital approximately two hours later ....

"Q. Did he tell you how this accident happened?

"A. Yes sir.

"Q. And this was in the hospital?

"A. Yes sir ....

"Q. What did he tell you about how this accident happened?

"A. Again I will state from the report here . . ."

At that point, counsel for appellee objected, and argued that the statement was not within the res gestae exception to the hearsay rule. The court ruled: "All right, I am going to sustain the objection unless you can show me." Appellant now contends that the court should have overruled the objection.

Our Supreme Court has held that there are four distinct exceptions to the hearsay rule which fall within the ambit of res gestae: (1) declarations of present bodily conditions; (2) declarations of present mental states and emotions; (3) excited utterances; and (4) declarations of present sense impressions. See *Commonwealth v. Cooley*, ... Pa. ..., 348 A.2d 103 (1975); *Commonwealth v. Coleman*, 458 Pa. 112, 326 A.2d 387 (1974); McCormick, *Evidence*, §288 (2d ed. 1972). The statement offered in the instant case concerns appellant's account of the accident. Therefore, it would be admissible only under the excited utterance exception.

The court *en banc* held that the trial court properly excluded the statement because (1) it was not part of the res gestae, and (2) it was cumulative because appellant had previously testified. This analysis misconceives the nature and purpose of the excited utterance exception to the hearsay rule: "The rationale for the exception lies in the special reliability which is regarded as furnished by the excitement suspending the declarant's powers of reflection and fabrication. This factor also serves to justify dispensing with any requirement that the declarant be unavailable, because it suggests that his testimony on the stand, given at a time when his powers of reflec-

tion and fabrication are operative, is less reliable than his out-of-court declaration." McCormick, *Evidence,* supra, §297 at 704. *See also, Cody v. S.K.F. Industries, Inc.,* 447 Pa. 558, 291 A.2d 772 (1972). Thus, the statement could not be excluded because it was cumulative—the entire thrust of the exception is that the excited utterance is more probative than in-court testimony[1]. If the trial court's ruling was proper, therefore, it was because the statement did not meet the requirements of the excited utterance exception.

In *Cody v. S.K.F. Industries, Inc.,* supra, the Supreme Court summarized the law governing the admission of excited utterances: "A res gestae declaration is a spontaneous utterance by an individual whose mind has suddenly been made subject to an overpowering emotion caused by some unexpected and shocking act or occurrence. The utterance is generated by, or springs out of the act, and the words are in a sense part of the act itself. Hence, the exciting events actually speak through the 'verbal acts' of the declarant. The words, which are in the nature of this emotional impulsive outburst, must be in the same continuous transaction with the acts, thus they are in a sense integrated into the acts. The utterance must be near in time to the occurrence and to insure trustworthiness it normally must be spoken to one of the first persons seen by the declarant after the act. The basis for the admission of the utterance is its spontaneity, thus all utterances which do not display the mandated instinctive naturalness must be excluded for fear that the words will emanate in whole or in part from the declarant's

---

1. But, see, McCormick, *Evidence,* supra at 704-705: "The entire basis for the exception is, of course, subject to question. While psychologists would probably concede that excitement minimizes the possibility of reflective self-interest influencing the declarant's statements, they would likely question whether this might be outweighed by the distorting effect of shock and excitement upon the declarant's observation and judgment. Despite this doubt concerning its justification, however, the exception is well-established."

reflective faculties. The declaration must be spoken under conditions which insure that it is not the result of premeditation, consideration or design, and it cannot be in the form of a narration or attempted explanation of past events, thus the process of the intellect cannot have had an opportunity to be set in motion." 447 Pa. at 563-564, 291 A.2d at 774-775 (citations and footnote omitted). *See also Commonwealth v. Cooley,* supra; *Allen v. Mack,* 345 Pa. 407, 28 A.2d 783 (1942).

There are two requirements, therefore, for admission under the excited utterance exception: "First, there must be some occurrence or event sufficiently startling to render normal reflective thought processes of an observer inoperative. Second, the statement of the declarant must have been a spontaneous reaction to the occurrence or event and not the result of reflective thought." McCormick, *Evidence,* supra, §297 at 704. In the instant case, the statement satisfies the first requirement. A serious automobile accident is certainly a startling event, especially when the declarant himself sustains injuries serious enough to warrant one week's hospitalization, and the declarant's son has died as a result of his injuries. The crucial issue is whether the statement was made under circumstances which preclude the possibility of reflective thought. See, e.g., *Campbell v. Gladden,* 383 Pa. 144, 118 A.2d 133 (1955).

Whether a statement is spontaneous depends on the peculiar facts and circumstances of each case. *McCurdy v. Greyhound Corp.,* 346 F.2d 224 (3d Cir. 1965). There is no fixed time limit which determines whether a statement is part of the res gestae, *Commonwealth v. Banks,* 454 Pa. 401, 311 A.2d 576 (1973); *Commonwealth v. Cheeks,* 423 Pa. 67, 223 A.2d 291 (1966); *Thompson v. Philadelphia,* 222 Pa. Superior Ct. 417, 294 A.2d 826 (1972), and the length of time is but one factor to be considered. *Cody v. S.K.F. Industries, Inc.,* supra. Further, our Supreme Court has repeatedly held that a state-

ment may be admissible even though it is made in response to a question. See, e.g., *Commonwealth v. Edwards*, 431 Pa. 44, 244 A.2d 683 (1968); *Commonwealth v. Stokes*, 409 Pa. 268, 186 A.2d 5 (1962). Finally, this Court has stated that "[t]here is no requirement that the proffered statement be an emotional or impulsive outburst, and no rule which prevents, per se, 'a narration of his idea as to how the accident happened' from being part of the res gestae." *Thompson v. Philadelphia, supra* at 419, 294 A.2d at 828.

Professor McCormick sets forth a balancing test to determine whether a statement is made under circumstances which exclude the possibility of reflective thought: "If the statement occurs while the exciting event is still in progress, courts have little difficulty finding that the excitement prompted the statement. But as the time between the event and the statement increases, so does the reluctance to find the statement an excited utterance. ... Perhaps an accurate rule of thumb might be that where the time interval between the event and the statement is long enough to permit reflective thought, *the statement will be excluded in the absence of some proof that the declarant did not in fact engage in a reflective thought process*. Testimony that the declarant still appeared 'nervous' or 'distraught' and that there was a reasonable basis for continuing emotional upset will often suffice. The nature of the exciting event and the declarant's concern with it are relevant, of course. ... Other factors may indicate the opposite conclusion. Evidence that the statement was self-serving or made in response to an inquiry, while not justification for automatic exclusion, is an indication that the statement was the result of reflective thought, and where the time interval permitted such thought these factors might swing the balance in favor of exclusion." McCormick, *Evidence, supra* at 706 (Emphasis added).

While the statement in the instant case was not made until two hours after the startling event, Pennsylvania

precedent indicates that this fact does not automatically render the statement inadmissible. For example, in *Thompson v. Philadelphia,* supra, the out-of-court statement was made to a police officer one hour after the accident, but was deemed admissible. The declarant was an 82-year-old man who had suffered a severe fracture of the left hip. The testimony at trial revealed that the statement was made in the hospital x-ray room at a time when the declarant was preoccupied with his injury. Furthermore, the fact that the statement was not made at the scene is not dispositive. In *Milwaukee Gear Company v. Charles Benjamin, Inc.,* 466 F.2d 588 (3d Cir. 1972), (applying Pennsylvania law) an officer of the Philadelphia Fire Department commenced an investigation while a fire was raging out of control. He first interrogated two employees of the defendant-company directly across the street from the blazing fire. Fifteen or twenty minutes later, the employees were re-interviewed in an office out of sight of the fire. The Court of Appeals affirmed the District Court's ruling that the employees' statements at the second interview were admissible as part of the res gestae because the statements were made at the height of the conflagration although not within its view, and because testimony was presented which indicated that the two employees were still "upset."

In the instant case, factors favoring admissibility are the nature of the startling event, appellant's concern with the death of his son and his own injuries. On the other hand, the statement was self-serving and made in response to an inquiry. Most importantly, however, is the complete absence of testimony which would dispel the inference that appellant had engaged in reflective thought. *Cf. Milwaukee Gear Company v. Charles Benjamin, Inc.,* supra; *Thompson v. Philadelphia,* supra. Two hours is simply too long a period of time to qualify as part of the res gestae without some indication that the statement was not the result of premeditation. Further-

more, there was no testimony to show that this was the first statement appellant made on this subject. The lower court, in ruling upon the objection, stated that "I am going to sustain the objection *unless you can show me.*" (Emphasis added). Appellant's counsel made no attempt to do so. Without an offer of proof tending to show that the statement was not the product of reflective self-interest, the trial court properly ruled it inadmissible.

## II.

Appellant next contends that the court *en banc* should have granted his motion for a general new trial.

The only trial error properly preserved for appeal was the issue of the admissibility of appellant's out-of-court statement.[2] The court *en banc*, however, felt "very strongly that the evidence does not support the amount of the verdicts. . . we believe that the jury failed to reduce the loss of future earnings to their present worth." The court then indicated what it believed the proper awards should be, and ordered that the verdict-winners accept the reduction or suffer a new trial on the issue of damages.[3]

There is no question that because the court *en banc* felt the verdicts were excessive, the remittitur was proper. "Appellants do not question the trial judge's power

---

2. Appellant did object to the court's submitting the issue of lost wages to the jury. However, the issue was not raised in post-trial motions and was not discussed in the opinion of the court *en banc*. The question of the sufficiency of the evidence to warrant a charge on lost wages, therefore, has not been properly preserved for appeal. *Dilliplaine v. Lehigh Valley Trust Company*, 457 Pa. 255, 322 A.2d 114 (1974).

3. The lower court clearly stated its reasons for ordering a new trial because of excessiveness: it believed that the jury failed to comply with the court's charge on reducing future earnings to their present worth. Thus, the problem presented by *Scaife Co. v. Rockwell-Standard Corp.*, 446 Pa. 280, 285 A.2d 451 (1971), cert. denied, 407 U.S. 920, is not present in the instant case.

to condition the denial of a new trial on the filing of a remittitur because of the excessiveness of the verdict. The power of the court to do so is well established in Pennsylvania. See 6A Standard Pennsylvania Practice, Ch. 28, §115." *Houston-Starr Co. v. Davenport,* 227 Pa. Superior Ct. 186, 191, 324 A.2d 495, 497 (1974). The sanction of remittitur is proper only to reduce the amount of a verdict considered excessive by the court. *Atene v. Lawrence,* 456 Pa. 541, 318 A.2d 695 (1974) ; *Bell v. Yellow Cab Co.,* 399 Pa. 332, 160 A.2d 437 (1960). In the instant case, it is clear that the court ordered the remittitur *solely* because it considered the verdict excessive, and not because of trial error. Cf. *Atene v. Lawrence,* supra.[4] Thus, if granting a limited new trial were proper, then conditioning the denial of a new trial on the filing of a remittitur was also proper.[5] The only issue, therefore, is whether the granting of a limited new trial was proper under the circumstances of this case.

"The granting of a new trial limited to the issue of damages was not permitted under the common law. . . . However, in the interest of justice and in order to expedite the final disposition of litigation, Pennsylvania and most other jurisdictions have wisely adopted a rule permitting such limited new trial under certain specific circumstances." *Troncatti v. Smereczniak,* 428 Pa. 7, 9,

---

4. See also *Corabi v. Curtis Publishing Co.,* 437 Pa. 143, 152-153, 262 A.2d 665, 669 (1970) : ". . . when the trial court concludes that the sole and exclusive basis for the granting of a new trial is the excessiveness of the verdict, it may set aside the verdict entirely or give the verdict winner the option of accepting a reduced verdict in lieu of a new trial . . . . This power to offer the option of a remittitur is a discretionary one . . . . It is out of fairness to the verdict winner and for his benefit that the court attempts to expedite and resolve the controversy by reducing the verdict to an amount the record supports and thereby save the difficulties incident to a second trial."

5. John Lininger filed the remittitur; Karen Kromer and the Estate of Robert Kobylarczyk did not.

235 A.2d 345, 346 (1967). The test set forth in *Troncatti* was two-fold: (1) the issue of liability must have been fairly determined; and (2) the question of damages must be readily separable from the issue of liability. In *Troncatti*, the award of a limited new trial was affirmed because the liability issue had been fairly determined, *i.e.,* there were no trial errors, and the issues were separable. Cf. *Rosen v. Slough*, 212 Pa. Superior Ct. 398, 242 A.2d 898 (1968). This test was reaffirmed in *Gagliano v. Ditzler*, 437 Pa. 230, 232-233, 263 A.2d 319, 320 (1970): "... a lower court may grant a new trial, limited to the issue of damages, *only* where (1) the question of liability is not intertwined with the question of damages, *and* (2) the issue of liability is either (a) not contested or (b) has been fairly determined so that no substantial complaint can be made with respect thereto." *See also Bacsick v. Barnes*, 234 Pa. Superior Ct. 616, 625, 341 A.2d 157 (1975).

In the instant case, the issue of liability affects only the two drivers. It is clear that both John Lininger and the Estate of Robert Kobylarczyk are entitled to recover; the only question from their standpoint is from whom. The determination of whether appellant or appellee was negligent was exclusively a matter of credibility; the two drivers were the only witnesses who could testify as to the cause of the accident and they gave conflicting accounts. The jury chose to believe appellee's version. The second prong of the *Gagliano* test has been met because the issue "has been fairly determined." Although the case was extremely close, there are no trial errors of record which may have affected the jury's verdict. The dispositive question, therefore, is whether the issue of liability is intertwined with the issue of damages.

The Supreme Court has held that "where a substantial conflict exists on the question of liability, such that a low verdict might indicate that the jury compromised the liability issue with the amount of damages awarded,

it is an abuse of discretion for the lower court to grant a new trial limited to the issue of damages." *Gagliano v. Ditzler,* supra at 232, 263 A.2d at 320. In the instant case, the jury awarded the Estate of Robert Kobylar- czyk $1,598.25 for special damages and $77,000.00 for loss of future earnings; John Lininger recovered $8,200.00 for special damages, $35,616.00 for lost wages, $40,284.00 for loss of future earnings, and $4,000.00 for pain and suffering; Karen Kromer recovered $16,575.80 for spe- cial damages, $14,840.00 for lost wages, $110,400.00 for loss of future earnings, and $9,000.00 for pain and suffer- ing. The court *en banc* determined, however, that the jury failed to reduce the awards for loss of future earn- ings to present worth, and held that a proper award for that element of damages would have been $48,363.33 for the Estate of Robert Kobylarczyk, $34,564.88 for John Lininger, and $42,852.62 for Karen Kromer.

The curious components of the jury's awards are special damages and pain and suffering. Both John Lininger and Karen Kromer were given approximately 50% of special damages for pain and suffering. In view of the serious injuries suffered by these plaintiffs, the pain and suffering awards are too low.[6] The jury may have compromised the pain and suffering damages in either of two ways: (1) The jury might have felt that because their awards for loss of future earnings were so high, it would not be proper to afford substantial re- covery for pain and suffering; or (2) The jury might have awarded a lower amount for pain and suffering be- cause they compromised the issue of liability, which was exceedingly close. If the first hypothesis is correct, the lower court properly ordered a limited new trial; if the second hypothesis is correct, the court's order was er- roneous.

---

6. In the words of the court *en banc,* "Karen Kromer was seriously injured and made a pathetic witness."

Were Karen Kromer the only plaintiff, it would be impossible to determine the jury's intent, and we would be compelled to reverse the lower court and order a new trial generally. However, John Lininger's role in the case is crucial. As stated previously, John Lininger was asleep at the time of the accident and, therefore, the record was totally devoid of any inference that he was negligent. John Lininger would recover if either appellant or appellee was held to have been negligent. Thus, the jury could not have compromised John Lininger's award with the issue of liability. The low pain and suffering given a party who was totally free from culpability would indicate that the jury's pain and suffering award was a compromise of their erroneously high award for loss of future earnings. It can be said, therefore, that the issue of liability is readily separable from the issue of damages. Because both prongs of the *Troncatti-Gagliano* test have been met, the lower court's award of a limited new trial was proper.

In the case of John Lininger v. Tony Kobylarczyk, the verdict as remitted is affirmed. In the cases of Karen Kromer v. Tony Kobylarczyk, and Estate of Robert Kobylarczyk v. Tony Kobylarczyk, the orders granting a limited new trial are affirmed.

JACOBS, J., concurs in the result.