419 A.2d 36

**Herman REID, Jr.**

v.

**Henry OXENDINE, Appellant.**

Superior Court of Pennsylvania.

Argued June 11, 1979.

Filed Feb. 1, 1980.

John A. Luchsinger, Media, for appellant.

William Archbold, Jr., Media, for appellee.

Before SPAETH, STRANAHAN and SUGERMAN, JJ.*

SPAETH, Judge:

This is an appeal from an order of the lower court granting appellee, the plaintiff below, a new trial limited to the issue of damages. Appellant argues that the lower court erred (1) in refusing to enter judgment n. o. v. in his favor; (2) in granting appellee a new trial; and (3) in limiting the new trial to the issue of damages.

This case arose out of a motor vehicle collision that occurred at approximately 3:00 p. m. on January 11, 1973, on Upland Avenue in Delaware County. Appellee described the accident as follows. He was driving his sister's automobile north on Upland Avenue and stopped in the left northbound lane directly across from the entrance to a shopping center located on the west side of the highway. When traffic in the left southbound lane stopped to permit appellee to make the left turn into the shopping center, he looked up the highway, saw that the road was clear, started his turn, looked again, and then drove across the southbound lanes toward the entrance to the shopping center. He was traveling at 5 to 10 miles per hour. Before he could completely enter the shopping center parking lot, however, his automobile was struck on the rear part of its right side by appellant's automobile. Appellant had been driving in the far right southbound traffic lane. Appellant's automobile bounced off appellee's and collided with an automobile in the left southbound lane. The force of the collision was such that the rear of appellee's automobile came to rest on top of a ten inch high concrete island in the center of the entrance to the shopping center. The rear wheels were damaged. Appellee maintained that when he looked up the highway it was clear. At various times during his testimony he estimated that he could see from approximately 300 to 550 feet up Upland Avenue and that no automobiles were approach-

* President Judge John Q. Stranahan, of the Court of Common Pleas of Mercer County, Pennsylvania, and Judge Leonard Sugerman, of the Court of Common Pleas of Chester County, Pennsylvania, are sitting by designation.

ing him. When questioned on cross–examination as to why he did not see appellant, he answered, "I guess I don't know where he came from." He said that appellant's automobile made skid marks approximately 75 feet long.

Two people who were on the scene testified in appellee's behalf, as follows. Luellen Alexander, a neighbor of appellee's, had been at her doctor's office that afternoon. She left at approximately 3:00 p. m., and drove down 24th Street to its intersection with Upland Avenue. While stopped at the stop sign she saw appellant speed past her on Upland Avenue at approximately 45 to 50 miles per hour. At about the same time, she saw appellee proceeding slowly across Upland Avenue toward the shopping center. Appellant braked his automobile suddenly and it skidded and collided with appellee's. The speed limit on Upland Avenue was 35 miles per hour. Diane Liss was driving in the left southbound lane on Upland Avenue at the time of the accident. Traffic had stopped in her lane so she stopped across from the entrance to the shopping center to permit appellee to make his left turn in front of her. Appellee made his turn very slowly. As he was completing the turn she heard the sound of squealing brakes behind her. She saw appellant's automobile collide with appellee's automobile and then with hers.

Appellee's testimony on the issue of damages was as follows. Immediately after the collision he heard a buzzing sound in his ears, and later that day he went to Sacred Heart Hospital with lower back and hip pains. He was treated by Dr. Charles Hummer and remained in the hospital until January 19. While in the hospital he was for awhile placed in traction. After his release from the hospital, he returned to Dr. Hummer, and received out–patient therapy at the hospital. He returned to work on April 4, 1973, but after working a few days, he again returned to Dr. Hummer and was again placed in the hospital with lower back and leg pains. He was released from the hospital on April 23, 1973, and returned to work in early June 1973. When he returned to work in June he had to wear a brace

and was under doctor's orders not to lift anything over fifteen pounds. He still had pain at the time of trial. Because of his pain he had missed several days of work, especially in the cold weather. When he was out of work in the winter and spring of 1973, there was a lot of activity in the shipyard where he worked. He therefore not only lost work but also the opportunity to work a substantial amount of overtime. Appellee admitted to having suffered two prior injuries to his back, one in 1946, and the other in August 1972. He said that he had had no problems with his back after the 1946 injury, and that he had only missed a week to ten days of work because of the August 1972 injury and was able to work regularly thereafter up until the time of the January 1973 accident.

Two of appellee's fellow employees at the shipyard corroborated appellee's testimony with respect to the availability of overtime. Videotape depositions of two doctors who treated appellee were also offered in evidence. Dr. Hummer diagnosed appellee's injury as an acute lumbrosacral sprain and hypertrophic ligamentum flavium. It was his opinion that this injury caused appellee to be hospitalized in January and in April, 1973, and thereafter kept him out of work. Dr. Bernard Finneson testified that he was called in by Dr. Hummer during appellee's April hospitalization. He said that a physical examination disclosed some spasm in the lumbar region and lessened mobility in the right leg, and that a myelogram examination showed a slight bulge of a portion of the disk and an excess growth of the ligamentum flavium. He admitted that the condition could have existed before the January accident but said that if it had, it would have made appellee more vulnerable to a violent trauma in the accident. It was his opinion that the cause of the back and leg pain suffered by appellee and the reason that he missed work and twice had to be hospitalized was the accident that had occurred on January 11, 1973. Medical bills of approximately $1,700 were offered in evidence.

Appellant testified in his own behalf and stated that he had been traveling at 15 to 25 miles per hour along Upland

Avenue when appellee suddenly drove across the highway in front of him. He said that there had been other automobiles traveling in the same direction, which passed appellee before appellee whipped out in front of him, and that he was only 30 to 40 feet away from appellee when he first saw appellee. Appellant also called Mary Montanaro as a witness. She testified that she worked for Dr. Brooks, the doctor Luellen Alexander said that she had been visiting before the accident, and that the doctor's appointment book indicated that Ms. Alexander had no appointment on the day and at the time in question.

The jury returned with a verdict in favor of appellee, with no financial recovery. On post–verdict motions, the lower court concluded that the jury was justified in finding appellant negligent and appellee not contributorily negligent, but that having made that finding, the jury "had no justification . . . [in] not render[ing] an award." Slip op. at 2. "After a careful review of the record", the court said, "we are convinced that the light of injustice burns brightly." *Id.*

*Should the lower court have entered judgment n. o. v.?*

Appellant argues that the evidence shows that appellee was contributorily negligent as a matter of law, and that therefore the lower court erred in denying appellant's motion for judgment n. o. v. In appraising this argument, we must view the evidence, and all reasonable inferences from it, in the light most favorable to appellee as the verdict winner. *Flickinger Estate v. Ritsky,* 452 Pa. 69, 305 A.2d 40 (1973); *Kresovich v. Fitzsimmons,* 439 Pa. 10, 264 A.2d 585 (1970); *Szumski v. Lehman Homes,* 267 Pa.Super. 478, 481, 406 A.2d 1142, 1143 (1979); *Winkler v. Seven Springs Farm, Inc.,* 240 Pa.Super. 641, 643–644, 359 A.2d 440, 441 (1976). This means that we must find and consider only that evidence that supports the verdict; any conflicts in the evidence must be resolved in appellee's favor. *Calhoun v. Jersey Shore Hosp.,* 250 Pa.Super. 567, 569, 378 A.2d 1294, 1295 (1977), *citing, Moyer v. Ford Motor Co.,* 205 Pa.Super. 384, 209 A.2d 43 (1965).

■ Appellee's testimony, and that of Ms. Liss, indicated that in making the turn, appellee checked for oncoming traffic and proceeded with care. From this evidence the jury could find that appellee was not contributorily negligent. Ms. Alexander's testimony that appellant was speeding, and the evidence concerning the length of the skid marks and the force of the collision, were a sufficient basis upon which the jury could find that appellant was negligent. Appellant argues that neither appellee's statement, that he did not see him, nor Ms. Alexander's testimony should have been believed. However, whether to believe a witness is for the jury to decide. In a rare case we may conclude that evidence is so manifestly implausible as to be incredible on its face, *see Gougher v. Hansler,* 388 Pa. 160, 165, 130 A.2d 150, 153 (1957), but nothing here would suggest such a conclusion. We therefore find no error in the lower court's refusal to enter judgment n. o. v. in appellant's favor.

*Should the lower court have granted a new trial?*

■ It is settled that "[w]here the trial court *grants* a new trial on the ground of inadequacy the appellate courts will not interfere in the absence of a gross abuse of discretion." *Coleman v. Pittsburgh Coal Co.,* 158 Pa.Super. 81, 85, 43 A.2d 540 (1945) (emphasis in original); *see Hevener v. Reilly,* 266 Pa.Super. 386, 392, 404 A.2d 1343, 1346; *Ditz v. Marshall,* 259 Pa.Super. 31, 393 A.2d 701 (1978); *Albert v. Alter,* 252 Pa.Super. 203, 381 A.2d 459 (1977); *Rusidoff v. DeBolt Transfer, Inc.,* 251 Pa.Super. 208, 380 A.2d 451 (1977).

In *Elza v. Chovan,* 396 Pa. 112, 152 A.2d 238 (1959), the Supreme Court provided some guidelines for trial courts to follow in determining whether motions for a new trial based upon inadequacy should be granted. The Court stated: "It is the province of the jury to assess the worth of the testimony and to accept or reject the estimates given by witnesses. If the verdict bears a reasonable resemblance to the proven damages, it is not the function of the court to substitute its judgment for the jury's. The mere fact that a verdict is low does not mean that it is inadequate." (Cita-

tions omitted). *Id.,* 396 Pa. at 115, 152 A.2d at 240. The Court also stated: "[T]here should be nothing difficult about a decision to grant a new trial for inadequacy: the injustice of the verdict should stand forth like a beacon." *Id.,* 396 Pa. at 118, 152 A.2d at 241. *And see Rutter v. Morris,* 212 Pa.Super. 466, 469, 243 A.2d 140, 142 (1968).

Here, appellee offered evidence that because of the accident he had to be hospitalized, he missed work, he incurred medical expenses of approximately $1,700, and he lost wages. Given the jury's finding that appellant was negligent and appellee not contributorily negligent, its award of no financial recovery bore no "reasonable resemblance" to the damages proved. We are therefore inclined to agree with the lower court's statement that the "injustice [of the verdict] burns brightly."

Appellant argues that by its verdict the jury intended a finding that appellee was contributorily negligent. This argument assumes, however, that the jury ignored the lower court's instructions, and we are unwilling to indulge that assumption simply because the verdict is–as we acknowledge it to be–difficult to understand. Appellant also argues that the verdict indicates that the jury found that appellee's injuries were the result of the prior accidents. Perhaps so. But if so, the jury disbelieved the expert medical testimony, in particular by Dr. Finneson, who said the pre–existing injuries would have been aggravated by the accident. Given this testimony, we cannot say that in granting a new trial the lower court committed "a gross abuse of discretion." *Coleman v. Pittsburgh Coal Co., supra.*

*Should the lower court have limited the new trial to the issue of damages?*

In *Lininger v. Kromer,* 238 Pa.Super. 259, 358 A.2d 89 (1976), this court stated that " '[t]he granting of a new trial limited to the issue of damages was not permitted under the common law. . . . However, in the interest of justice and in order to expedite the final disposition of litigation, Pennsylvania and most other jurisdictions have wisely

adopted a rule permitting such limited new trials under certain specific circumstances." *Id.,* 238 Pa.Super. at 272, 358 A.2d at 96, *quoting Troncatti v. Smereczniak,* 428 Pa. 7, 9, 235 A.2d 345, 346 (1967); *Lambert v. PBI Industries,* 244 Pa.Super. 118, 139, 366 A.2d 944, 955 (1976). This rule has two requirements: (1) the issue of liability must have been fairly determined, and (2) the question of damages must be readily separable from the issue of liability. *Lambert v. PBI Industries, supra,* 244 Pa.Super. at 139, 366 A.2d at 955. The question here is whether the first of these two requirements has been met.

In deciding whether a new trial should be granted on the basis of the inadequacy of the verdict, as opposed to its excessiveness, the issue of liability will only be deemed to have been "fairly determined" where it is "uncontested", "clear", or "free from doubt". *Gagliano v. Ditzler,* 437 Pa. 230, 263 A.2d 319 (1970); *Lambert v. PBI Industries, supra.* An inadequate verdict may in fact be a compromise verdict, that is, a verdict reflecting an agreement among the jurors to lessen the plaintiff's award because of evidence that he contributed to the injury. In such a case the issue of liability would *not* have been "fairly determined." It would therefore do an injustice to the defendant to award a new trial limited to the issue of damages. The requirement that the issue of liability must be "free from doubt", if the new trial is to be limited to the issue of damages, is an attempt to guard against doing this injustice. *See Lambert v. PBI Industries, supra* (discussing the difference between a limited new trial on grounds of inadequacy as opposed to excessiveness).

Here, appellant vigorously contested his liability. In doing so he was by no means acting capriciously. His argument that appellee was contributorily negligent was supported to some extent by appellee's own testimony that he could see approximately 300 to 550 feet north on Upland Avenue, and yet he did not see appellant. Moreover, the testimony of Ms. Alexander was subject to question: she was appellee's neighbor, and there was testimony that according to Dr. Brooks's appointment book, she did not have

an appointment with him on the day of the accident. On such a record we cannot say that the issue of liability is "free from doubt."[1] Accordingly, we hold that the lower court's order granting a new trial limited to damages must be modified to provide that the new trial will be a new trial generally.

Affirmed as modified.

1. In granting a new trial limited to the issue of damages the lower court relied on this court's decisions in *Stathas v. Wade*, 251 Pa.Super. 269, 380 A.2d 482 (1977), and *Palmer v. Brest*, 254 Pa.Super. 532, 386 A.2d 77 (1978), and on the Supreme Court's decision in *Stokan v. Turnball*, 480 Pa. 71, 389 A.2d 90 (1978). All of those cases are distinguishable from this case, however. In *Stathas* the accident was a rear end collision and there was no evidence offered by the defendant to refute his liability; in *Palmer* the plaintiff was a passenger in the defendant's automobile and there was no evidence that the plaintiff was contributorily negligent in failing to object to the defendant's manner of driving. Thus, in both cases the issue of liability was free from doubt. In *Stokan* the issue was not whether a retrial limited to damages was proper but rather whether a retrial limited to one of two defendants was proper.