648 A.2d 1

John A. KISER and Cheryl Kiser, Administrators of the Estate of Kerry Ellen Kiser, Deceased; John A. Kiser and Cheryl Kiser, in their own right,

v.

Daryl SCHULTE,

v.

Jeffrey HAMPE, Marshall Black, Francine Fox, Keith Fox, Michael A. Slachta, Roxanne M. Fox Slachta, Linda L. Fox Trinnes and Edward Trinnes.

Appeal of Linda L. Fox TRINNES and Edward Trinnes,

John A. KISER and Cheryl Kiser, Administrators of the Estate of Kerry Ellen Kiser, Deceased; John A. Kiser and Cheryl Kiser, in their own right,

v.

Daryl SCHULTE, Appellant,

v.

Jeffrey HAMPE, Marshall Black, Francine Fox, Keith Fox, Michael A. Slachta, Roxanne M. Fox Slachta, Linda L. Fox Trinnes and Edward Trinnes.

Supreme Court of Pennsylvania.

Argued Sept. 21, 1993.

Decided Sept. 13, 1994.

Peter B. Skeel, Swensen, Perer & Johnson, Pittsburgh, PA, for appellants in No. 71.

Frank M. Gianola, Michael Nerone, Dickie, McCamey & Chilcote, P.C., Pittsburgh, PA, for appellants in No. 72.

James B. Cole, Pittsburgh, for John and Cheryl Kiser.

Deborah A. Little, Pittsburgh, for Jeffrey Hampe.

Frank M. Gianola, Michael Nerone, Dickie, McCamey & Chilcote, P.C., Pittsburgh, for Daryl Schulte.

Warren Siegfried, Wayman, Irvin & McAuley, Pittsburgh, for Michael A. Slachta and Roxanne M. Fox Slachta.

Maury Nusbaum, Pittsburgh, for Marshall Black, Pittsburgh, PA, for appellee in No. 71.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## OPINION

MONTEMURO, Justice.

Appellants Daryl Schulte, Linda Fox Trinnes, and Edward Trinnes appeal from an Order of the Superior Court vacating

the jury's award of damages as inadequate and remanding the case for a new trial on the issue of damages alone. We affirm.

The issues presented for our review are: (1) whether the jury award of $25,000 for the wrongful death and survival claims arising out of the death of Kerry Ellen Kiser was so inadequate as to "shock the conscience"; and (2) whether the case should be remanded for a new trial solely on the issue of damages.

The pertinent facts in this case are as follows. On March 6, 1987, Appellant, Daryl Schulte, attended a wedding reception organized by the bride's parents, Co–Appellants Linda Fox Trinnes and Edward Trinnes. Schulte, then 18 years old, took his girlfriend and Appellee's decedent, Kerry Kiser, as passengers. These two women were also eighteen years old.

At the reception Schulte, his girlfriend, and Kiser consumed large quantities of alcoholic beverages. They remained at the reception from 7:00 p.m. until 9:30 p.m. where Schulte consumed between six and eight whiskey sours. Schulte and the women left the reception in Schulte's father's car with Schulte driving. He proceeded to drive at a high rate of speed when, not far from the reception, his car rammed another car, hit the curb, became airborne, hit a street light pole, and flipped over in an adjacent field. Schulte and his girlfriend suffered minor injuries. Ms. Kiser was thrown from the vehicle and suffered fatal injuries.

Appellees brought wrongful death and survival actions against Schulte. Schulte joined the Trinneses as additional defendants as well as the bartenders and the bride and groom. At trial, extensive testimony was presented that went to the issue of liability.

The only evidence on the issue of damages was offered by the Appellees. The parents and siblings of the deceased testified as to the character and personality traits of Ms. Kiser. Appellees also offered the only expert testimony in the form of a video-taped deposition of Dr. James L. Kenkell, Ph.D., a professor of economics at the University of Pittsburgh. He testified that the value of the loss of services to

the Kiser family, resulting from the death of Ms. Kiser, would range from $11,862.50 to $18,980.00.

Dr. Kenkell further testified as to the net economic loss resulting from the death of Appellant's decedent. He testified that this figure included potential income, fringe benefits, and household services—less personal maintenance expenses. He explained how he employed various data compiled by the U.S. government and other sources to arrive at a net economic loss figure. Dr. Kenkell estimated that a white female, such as Ms. Kiser, would have a working lifetime of 42.5 years. He then projected that as a high school graduate she could expect to earn $792,352.15 over that lifetime or $18,643.58 per year. After adding in fringe benefits and household services, Dr. Kenkell subtracted personal maintenance expenses which he calculated at 40% of income. Thus, the figure of $571,659.29 was arrived at as the net economic loss resulting from the death of a white female high school graduate of the same age as Ms. Kiser.

As Ms. Kiser was enrolled in a two-year college program at the time of her death, Dr. Kenkell also calculated a net economic loss figure for a college graduate. This figure was $756,081.43 based on a four year degree program. He explained that the figure for a graduate of a two-year college program was roughly midway between the high school and four-year college figures.

On cross-examination, Dr. Kenkell admitted that there was a probability that Ms. Kiser's working lifetime would be less than 42.5 years. He stated that the average working lifetime for a woman who took time away from her career to raise a family was 29.1 years. Further, he admitted that the 40% rate he used for the personal maintenance deduction may have been low. He conceded that a 70% rate may more accurately reflect personal maintenance. Using these new parameters, Dr. Kenkell recalculated the net economic loss and arrived at a figure of $232,400.20 for a white high school graduate.

The jury returned answers to special interrogatories with its verdict. It found negligence on the part of Mr. Schulte as

the driver and the Trinneses as the reception hosts. It also found that Ms. Kiser was negligent. However, the jury specifically found that Ms. Kiser's negligence was not a substantial factor in bringing about her death. The jury found that the negligence of Mr. Schulte and the Trinneses were substantial factors and assessed liability at 60 percent and 40 percent respectively. The jury then awarded damages in the amount of $25,000. The Superior Court vacated this award after finding it inadequate and remanded the case for trial on the issue of damages alone.

It is well settled that the grant of a new trial is a matter within the discretion of the trial court. *Burrell v. Philadelphia Elec. Co.,* 438 Pa. 286, 288, 265 A.2d 516, 517 (1970); *Krivijanski v. Union Ry. Co.,* 357 Pa.Super. 196, 199, 515 A.2d 933, 935 (1986). However, that discretion is not absolute, and this Court will reverse the lower court if it has abused its discretion. *Burrell,* 438 Pa. at 288, 265 A.2d at 517 (citing *Austin v. Ridge,* 435 Pa. 1, 4, 255 A.2d 123, 124 (1969)).

In the instant case, we find that the trial court abused its discretion in not awarding a new trial because the jury verdict was clearly inadequate. A jury verdict is set aside as inadequate when it appears to have been the product of passion, prejudice, partiality, or corruption, or where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff. *Elza v. Chovan,* 396 Pa. 112, 114, 152 A.2d 238, 240 (1959); *Slaseman v. Meyers,* 309 Pa.Super. 537, 541, 455 A.2d 1213, 1215 (1983). Where the jury's verdict is so contrary to the evidence as to "shock one's sense of justice" a new trial should be awarded. *Burrell,* 438 Pa. at 289, 265 A.2d at 518; *Bochar v. J.B. Martin Motors,* 374 Pa. 240, 242, 97 A.2d 813, 814 (1953). It is the province of the jury to assess the worth of the testimony and to accept or reject the estimates given by the witnesses. If the verdict bears a reasonable resemblance to the proven damages, it is not the function of the court to substitute its judgement for the jury's. *Elza,* 396 Pa. at 115, 152 A.2d at 240 (citing *Paustenbaugh v.*

*Ward Baking Co.*, 374 Pa. 418, 97 A.2d 816 (1953)). However, where the injustice of the verdict "stand[s] forth like a beacon", a court should not hesitate to find it inadequate and order a new trial. *Elza*, 396 Pa. at 118, 152 A.2d at 241; *Slaseman*, 309 Pa.Super. at 540; 455 A.2d at 1215. We find that the jury's verdict in the case at bar was so contrary to the uncontroverted evidence introduced at trial as to shock the sense of justice of a reasonable trial judge and to necessitate the award of a new trial.

Here, the Kisers brought wrongful death and survival actions against the defendants.[1] An action for wrongful death may be brought by the personal representative of those persons entitled to receive damages for wrongful death under the statute. *Tulewicz v. S.E. Pa. Transp. Auth.*, 529 Pa. 588, 596, 606 A.2d 427, 431 (1992). *See also* 42 Pa.C.S. § 8301(d). Wrongful death damages are established for the purpose of compensating the spouse, children, or parents of a deceased for pecuniary loss they have sustained as a result of the death of the decedent. *Tulewicz*, 529 Pa. at 597, 606 A.2d at 431; *Burkett v. George*, 118 Pa.Commw. 543, 546, 545 A.2d 985, 987 (1988). The damages recoverable in a wrongful death action include the present value of the services the deceased would have rendered to the family, had she lived, as well as funeral and medical expenses. *Burkett*, 118 Pa.Commw. at 546, 545 A.2d at 987; *Heffner v. Allstate Ins. Co.*, 265 Pa.Super. 181, 190, 401 A.2d 1160, 1164 (1979).

A survival action, on the other hand, is brought by the administrator of the decedent's estate in order to recover the loss to the estate of the decedent resulting from the tort. *Tulewicz*, 529 Pa. at 597, 606 A.2d at 431; *Prince v. Adams*, 229 Pa.Super. 150, 154, 324 A.2d 358, 360 (1974). The measure of damages awarded in a survival action include the decedent's pain and suffering, the loss of gross earning power from the date of injury until death, and the loss of his earning power—less personal maintenance expenses, from the time of

---

1. The wrongful death action was brought pursuant to 42 Pa.C.S. § 8301, and the survival action was brought pursuant to 42 Pa.C.S. § 8302.

death through his estimated working life span. *Slaseman,* 309 Pa.Super. at 544–45, 455 A.2d at 1217; *Burkett,* 118 Pa. Commw. at 548, 545 A.2d at 986. *See also Incollingo v. Ewing,* 444 Pa. 263, 309, 282 A.2d 206, 229 (1971).

■ These two actions are designed to compensate two different categories of claimants the spouse and/or members of the decedents family for wrongful death of the decedent, and the decedent herself through the legal person of her estate. *Tulewicz,* 529 Pa. at 597, 606 A.2d at 431. However, the actions for damages are cumulative and are not to overlap or result in duplication of damages. *Id.* (citing *Pezulli v. D'Ambrosia,* 344 Pa. 643, 26 A.2d 659 (1942)).

In support of these actions, the Kisers presented an expert witness, Dr. James L. Kenkell, to testify as to the economic losses caused by the death of Kerry Kiser. Dr. Kenkell testified that the value of the loss of services to the Kiser family, resulting from the death of Ms. Kiser, would be from $11,862.50 to $18,980.00. Deposition of Dr. James L. Kenkell, Ph.D at 25. Dr. Kenkell further testified that, assuming a high school education, the net economic loss resulting from Ms. Kiser's death would be $571,659.00 after adding income, fringe benefits, and household services and subtracting personal maintenance expenses. Deposition of Dr. Kenkell at 26. Dr. Kenkell estimated that the net economic loss resulting from Ms. Kiser's death would be $756,081.43 if she had obtained a college education. On cross-examination, Dr. Kenkell testified that the net economic loss from the death of Ms. Kiser would be $232,400.00 using a 70% personal maintenance deduction rather than the 40% deduction he had used during direct examination. Deposition of Dr. Kenkell at 46. Thus, the uncontroverted testimony at trial was that the net economic loss that would result from Ms. Kiser's death ranged from $232,400.00 to $756,081.43.

The jury considered this evidence and awarded the Kisers $25,000.00. We can find no basis for this award in any of the evidence produced at trial. While we are loathe to speculate on the jury's reasoning behind this award, two unsatisfactory

rationales were set forth by the Superior Court. In his dissent, Judge Del Sole found that this amount could have been reached by "awarding the funeral and cemetery expenses and a sum for loss of services." *Kiser v. Schulte*, 424 Pa.Super. 654, 617 A.2d 396 (Table) (1992) (Del Sole, J. dissenting). It is plausible that the $25,000 award represented an award of funeral costs and loss of services.[2] Such an award would be proper for the Appellees' wrongful death claim as parents of the decedent. However, Appellees also brought a survival claim on behalf of the decedent as executors of the decedent's estate. As discussed *supra*, under Pennsylvania law, wrongful death and survival claims are two distinct claims compensating two distinct classes of plaintiffs for two distinct types of losses. Here, the estate of the decedent was entitled to receive damages for the decedent's loss of earning power minus her personal maintenance expenses. Judge Del Sole's assertion that the Appellees were properly compensated by the jury award for funeral expenses and loss of services compels the conclusion that the jury determined the decedent's estate was not entitled to any damages on the survival claim. We believe that such conclusion is contrary to our law and the uncontroverted evidence presented at trial and is, therefore, "shocking."

In the alternative, the Majority of the Superior Court suggested that the $25,000 was awarded as total compensation for the wrongful death and survival claims. We agree with the Majority of the Superior Court that even if we were to assume that the $16,589.00 of the $25,000 verdict in excess of funeral expenses was awarded on the wrongful death and survival actions, we would find this award "shocking" with no basis in the trial testimony. As the Superior Court noted, the award would amount to $10.96 per week over an earnings lifetime of 29.1 years. Such an award simply has no basis in the uncontradicted expert testimony placing the loss of ser-

**2.** The Kisers incurred funeral expenses of $8,411.00. The balance of the $25,000 award minus these expenses is $16,589.00. This balance is approximately at the midpoint of the range provided by Dr. Kenkell for loss of services. Thus, the $25,000 figure could have represented an award of funeral expenses and loss of services.

vices to the Kisers in the wrongful death action in the range from $11,862.50 to $18,980.00 and the net economic loss to Ms. Kiser's estate in the range from $232,400.00 to $756,081.43. The jury's award effectively compensates the Kisers for the loss of services of their daughter and the funeral expenses incurred. However, it clearly fails to compensate Ms. Kiser's estate for the net economic loss it sustained by the loss of Ms. Kiser at an early age.

We agree with the Appellants that a jury is free to believe or disbelieve opinion evidence presented by an expert witness. *See, e.g., Gaitia v. Pamula,* 385 Pa. 171, 174–75, 122 A.2d 63, 63 (1956); *Alegeo v. Pittsburgh Rys. Co.,* 202 Pa.Super. 548, 552, 198 A.2d 415, 416–17 (1964). However, here, we must once again point out that the uncontroverted testimony of the Appellee's expert established that the net economic loss resulting from Ms. Kiser's death ranged from $232,400 to $756,081.43. The defense did not present any other experts or any other evidence to the contrary on the question of damages.[3] When faced with such uncontroverted evidence, a jury's verdict must bear a reasonable resemblance to the proven damages. *See Elza,* 396 Pa. at 115, 152 A.2d at 241. This is not a case in which the jury was entitled to disbelieve one expert in favor of another as only one expert was presented. Nor is this a case where the jury could completely discredit the testimony of Dr. Kenkell as even under the scrutiny of extensive cross-examination his calculations yielded a net economic loss figure of $232,400. Instead, in this case, the jury totally disregarded the only evidence presented on the question of damages and settled on a somewhat capricious and inadequate amount of $25,000. The jury verdict here simply does not

3. In fact, upon examination of the record, defense attorney Gianola implicitly endorsed the lowest figure of net income given by Dr. Kenkell on cross-examination when he stated in his closing argument: "Even if you used the 40 percent he used, you are at $395,000, but if you use the 70%, the most conservative figure, the Bureau of Labor statistics figure, you are down to $232,000.... I'm not suggesting that you have to accept Dr. Kenkell's figures. I'm just showing you how they can be more realistically, more reasonably approached." Notes of Trial at 385.

bear any rational relationship to the uncontroverted testimony presented by Dr. Kenkell.[4]

Courts of this Commonwealth have found similar awards inadequate in wrongful death and survival actions. For example, in *Slaseman,* the uncontradicted testimony in a wrongful death action demonstrated that the decedent would have had lost earnings, lost social security benefits, lost benefits, and loss of value of services far in excess of the $11,234.51 awarded by the jury. The court held:

> We see no reasonable relation between the total amount awarded and the amount of the damages proved. The wrongful death verdict was for $11,234.51, $3,234.51 of which was the expenses caused by death. This leaves the amount of eight thousand dollars compensating this widow for the loss of a husband who had a projected life span of at least twenty years, and a working life-span of ten to fifteen years. . . .

*Slaseman,* 309 Pa.Super. at 548, 455 A.2d at 1218.

The Superior Court vacated the verdict as inadequate and remanded to the trial court for a new verdict "in order that

4. In his dissent, Mr. Justice Flaherty argues that our opinion unduly interferes with the jury's "freedom to evaluate the evidence and to accept it or reject it as they see fit." Dissenting Opinion at 9. He further asserts that "[t]he plaintiff need only to produce expert opinion of lost earnings . . . and if the defendant has no evidence to controvert such expert opinion, the court's only task would be to enter judgment in the amount of the expert opinion." *Id.* In answering Mr. Justice Flaherty's concerns, we reiterate our standard of review in cases such as these. As discussed above, an appellate court will only award a new trial where the jury's verdict is so contrary to the evidence as to shock one's sense of justice. Nothing in our opinion requires an award of a new trial where the jury's award does not match the expert testimony dollar for dollar. In many cases the award of the jury may be inadequate because it falls below the uncontroverted testimony of an expert. In these cases, an appellate court should defer to the jury's evaluation of the evidence and uphold the verdict. It is only in the rare case, such as the instant case, where the jury's verdict is so patently inadequate as to shock the conscience of the court that an appellate court should inquire into the adequacy of the verdict. Thus, we do not believe that anything in our opinion interferes with a jury's ability to evaluate evidence, except in cases where the verdict is so grossly inadequate that it is evident that the jury was mistaken.

the [ ] family may be compensated to the full extent of the loss they have sustained." *Id.* at 550, 455 A.2d at 1220.

In *Burkett,* an eighteen year old computer paper machine operator died as a result of injuries sustained in an automobile accident. The jury awarded wrongful death damages in the amount of $50,000, but did not award any damages in the survival action. An actuary estimated the decedent's net earnings to be $763,447. The trial court concluded that the jury's failure to award any damages was an error because it ignored uncontradicted evidence of solid employment skills. The court, thus, granted a new trial on the survival and wrongful death damages holding that the amounts awarded were inconsistent with the evidence. The Commonwealth Court reviewed the conclusion of the trial court and held that a new trial for survival damages was properly awarded. *Burkett,* 118 Pa.Commw. at 549, 545 A.2d at 987–88.

Similarly, in *Prince,* a fifteen year old boy was killed in an automobile accident. The jury awarded $2,689.20 in the wrongful death action and $1,000 in the survival action. The Superior Court held that the jury made this award "even though there was uncontroverted evidence that the boy was of above average intelligence and had already demonstrated a propensity for hard work." *Prince,* 229 Pa.Super. at 154, 324 A.2d at 360. The court concluded:

[W]e are convinced that the award of $1,000.00 under the survival action must have been the result of passion, prejudice, or a misconception of law or evidence. It is so patently inadequate as to present a clear case of injustice.... The award of $1,000.00 to the estate of a boy of above average intelligence, sound moral character, and possessing a capacity for gainful employment, does not adequately cover the damages to the estate of that boy.

*Id.* at 155, 324 A.2d at 360.

The Superior Court ordered a new trial limited to those damages recoverable under the survival action.

These cases properly stand for the proposition that when a jury's verdict has no basis in the uncontroverted

232

evidence offered at trial so as to be grossly inadequate that verdict should be vacated. As in these cases, uncontroverted testimony on the question of damages was provided in the instant case. Also, as in these cases, the estate of the decedent was awarded little to no compensation in the face of uncontroverted testimony. We believe that this case also presents "a clear case of injustice." *Id.* Here, too, the decedent had "above average" intelligence as evidenced by her enrollment at a two year college, and certainly possessed "capacity for gainful employment." Thus, the jury's award clearly does not adequately cover damages to the Kisers or to the estate of the decedent. The Kisers and the decedent's estate have not been "compensated to the full extent of the loss [they] sustained." *See Slaseman,* 309 Pa.Super 550, 455 A.2d at 1218. We find that the injustice of this verdict certainly "stand[s] forth like a beacon." *See Elza,* 396 Pa. at 118, 152 A.2d at 241. The jury's verdict told the Kisers that their daughter had little to no potential for earning a livelihood in excess of her personal maintenance expenses. This conclusion, we find, is contrary to the uncontroverted evidence presented at trial, and does an injustice to the family and estate of Ms. Kiser.[5]

5. The present case is markedly different from the one we considered in *Catalano v. Bujak,* 537 Pa. 155, 642 A.2d 448 (1994). In that case, Catalano sued officer Bujak for injuries he allegedly suffered as a result of an arrest. Catalano claimed that these injuries caused him pain, suffering, and loss of twenty-one weeks of employment. The jury found Officer Bujak's conduct was willful and that his willful conduct had harmed Catalano. The jury awarded Catalano damages for his medical costs, but none for lost wages, loss of future earning capacity, pain and suffering or embarrassment and humiliation. We overruled the Commonwealth Court which had found the verdict inadequate, and we held: "It would appear that the jury simply disbelieved evidence in excess of what it awarded.... In this case the jury apparently did not believe that pain and suffering, for example, or missed work, resulted from the injury which Bujak caused." *Catalano v. Bujak,* at 161, 642 A.2d at 451. The instant case is distinguished from *Catalano* in that the evidence of damages in this case is uncontroverted. In *Catalano,* Officer Bujak presented extensive evidence that Catalano suffered an injury at his job which was the real cause of his loss of employment and pain and suffering. Here, there was no such evidence offered by the defense. Thus, the jury's verdict in *Catalano* had a rational basis in the evidence offered at trial; the jury believed Officer Bujak's theory over the one presented by Catalano. Here, as discussed *supra,* the jury's

■ Appellants also argue that the Superior Court erred in remanding this case for a new trial limited to the issue of damages. The granting of a new trial limited to damages was not permitted under the common law. *Troncatti v. Smereczniak*, 428 Pa. 7, 9, 235 A.2d 345, 346 (1967); *Lininger v. Kromer*, 238 Pa.Super. 259, 272, 358 A.2d 89, 96 (1976). However, Pennsylvania and most other jurisdictions have adopted a rule permitting such limited new trials under certain specific circumstances. *Troncatti*, 428 Pa. at 9, 235 A.2d at 346; *Lambert v. PBI Industries*, 244 Pa.Super. 118, 366 A.2d 944, 955 (1976). A new trial limited to the issue of damages will be granted where: (1) the issue of damages is not "intertwined" with the issue of liability; and (2) where the issue of liability has been "fairly determined" or is "free from doubt." *Gagliano v. Ditzler*, 437 Pa. 230, 232–33, 263 A.2d 319, 320 (1970); *Reid v. Oxendine*, 275 Pa.Super. 548, 556, 419 A.2d 36, 40 (1980).

■ Appellants assert that the verdict in the instant case is a "compromise verdict" and, therefore, liability in this case is still at issue and the case must be remanded for a trial on liability. *See Burkett*, 118 Pa.Commw. at 548–51, 545 A.2d at 988–89; *Dougherty v. Sadsbury Township*, 299 Pa.Super. 357, 362, 445 A.2d 793, 795 (1982). A compromise verdict is one where the jury, in doubt as to the defendant's negligence or plaintiff's contributory negligence, returns a verdict for the plaintiff but in a lesser amount than it would have if these questions had been free from doubt. *Stokan v. Turnbull*, 480 Pa. 71, 78, 389 A.2d 90, 93 (1978); *Burkett*, 118 Pa.Commw. at 548, 545 A.2d at 988. We are in agreement with the Superior Court that the instant case was not a compromise verdict. The jury was clearly not in doubt as to the negligence of the defendants or as to the contributory negligence of Ms. Kiser. The jury completely exonerated two of the defendants and apportioned the negligence 60%–20%–20% among Mr. Schulte and the Trinneses. The jury found in the special interrogatories that Ms. Kiser was contributorily negligent, but also

verdict to award no damages in the survival action has no basis in the evidence offered at trial.

found that this negligence was not a substantial factor in bringing about her death. We find that the decision of the jury as evidenced by the special interrogatories was unambiguous and "free from doubt."

 Nor do we believe that this is a case where the issue of damages is intertwined with the issue of liability.[6] It is fair here to both parties to limit the new trial to the specific issue of damages. *See Burkett,* 118 Pa.Commw. at 551, 545 A.2d at 989 (new trials should be limited to specific issues only when the procedure is fair to both parties). The Appellants had a fair opportunity to litigate the issues of negligence and contributory negligence and the jury found against them and apportioned the damages accordingly. It would be unfair to the Kaisers to force them to re-litigate these issues in order to obtain the full extent of damages for themselves and the decedent's estate after liability had been so clearly determined by the jury.

For the reasons set forth above, we affirm the Order of the Superior Court vacating the jury award and remanding the case for a new trial on the issue of damages alone.

LARSEN, J., did not participate in the consideration or decision of this case.

---

**6.** In *Dougherty v. Sadsbury Township,* 299 Pa.Super. 357, 445 A.2d 793 (1982), the Superior Court held that the jury's verdict was a "compromise verdict" and found that the issue of liability was heavily intertwined with the issue of the negligence of the several defendants as the "negligence of the drivers of the respective vehicles and the negligence of the traffic control officer were much in dispute and vigorously contested. Thus, the court held that a new trial on the issue of damages alone was inappropriate. Likewise, here, the defendants vigorously contest liability amongst themselves. However, as discussed above, we cannot agree that the verdict in this case was a compromise verdict. We believe that the verdict here was not a result of the jury being unable to apportion blame among the several defendants. More likely, we believe that the low verdict was a result of jury instructions that did not adequately explain that Petitioners were entitled to both wrongful death and survival damages and/or the hostility of the trial judge to such damages. *See* Notes of Testimony, March 4–7, 1991, at 158–59. Therefore, despite a factual similarity to *Dougherty,* we cannot agree that here the issue of damages is intertwined with the issue of liability.

FLAHERTY, J., files a dissenting opinion.

MONTEMURO, Senior Justice, was an appointed Justice of the Court at the time of argument.*

FLAHERTY, Justice, dissenting.

Mr. Justice Montemuro's well-reasoned opinion notwithstanding, I must dissent. Fundamentally at issue in this case is whether juries are to have the freedom to believe all, part or none of the evidence presented at trial, as we instruct them they are free to do, or whether, in fact, they must believe at least so much of the evidence as we, the appellate courts, say they must believe. Because juries must, in my view, retain their freedom to evaluate the evidence and to accept or reject it as they see fit, I would not award a new trial on damages in this case. The jury here has evaluated the evidence and has spoken as to damages. We should not interfere.

I agree with Mr. Justice Montemuro that this case is different from *Catalano* in that here there was no evidence presented to refute the expert's opinion as to the decedent's future earnings, whereas in *Catalano* there was evidence presented to controvert Catalano's claim of damages. But if this difference controls the case, then we need not even have trials in cases like this. The plaintiff need only produce expert opinion of lost earnings and pain and suffering, and if the defendant has no evidence to controvert such expert opinion, the court's only remaining task would be to enter judgment in the amount of the expert opinion. Any other result, we might say, would "shock the conscience."

The sum of the problem is that existing caselaw, which Mr. Justice Montemuro has so ably summarized, has presented us with an anomaly: it has simultaneously held that juries may not be restricted in their evaluation of evidence and also that when juries reject evidence which appellate courts would not reject, the appellate court's evaluation of the evidence must

* Mr. Justice Montemuro is sitting by designation as Senior Justice pursuant to Judicial Assignment Docket No. 94 R1801, due to the unavailability of Mr. Justice Larsen, see No. 127 Judicial Administration Docket No. 1, filed October 28, 1993.

prevail. I believe that this result needlessly undermines the function of trial by jury, and I would overrule existing caselaw to the extent necessary to restore to juries the traditional authority to evaluate the evidence as they see fit.