**Denisco v. Green**

120

Steven J. Margolis, for plaintiff.
John S. Tucci, for defendant.

JOHNSON, J., March 1, 2010—Before the court for consideration is the motion for post-trial relief of plaintiff, Karen Denisco filed on September 24, 2009. The court heard argument on this motion on February 12, 2010.

This action arose from a motor vehicle accident that occurred between the parties. A jury trial was held in this matter on September 9, 2009 through September 16, 2009, after which the jury returned a verdict finding negligence on the part of the defendant, but that said negligence was not a factual cause of the plaintiff's injuries. The plaintiff filed timely post-trial motions on September 24, 2009.

The court will address below each post-trial issue raised by the plaintiff:

## I. MOTION FOR NEW TRIAL: STANDARD OF REVIEW

It is well-settled law in Pennsylvania that a new trial should only be granted where a jury's verdict shocks one's sense of justice because it is so contrary to the evidence admitted at trial. *Carroll v. Avallone,* 595 Pa.

676, 680, 939 A.2d 872, 874 (2007). It is the province of the jury to assess the worth of all testimony presented and the jury is free to believe all, some or none of the witness testimony presented at trial. *Neison v. Hines,* 539 Pa. 516, 653 A.2d 634 (1995). The jury's verdict may be set aside if it is the product of passion, prejudice, partiality or corruption or if it is clear the verdict bears no reasonable relationship to the loss suffered by the plaintiff based on the uncontroverted evidence presented. *Kiser v. Schulte,* 538 Pa. 219, 648 A.2d 1 (1994).

## II. ISSUES RAISED BY THE PLAINTIFF

### a. *Motion for a New Trial as to Damages Only Due To the Defendant's "Adoption" of Causation Testimony*

The plaintiff seeks the award of a new trial on the issue of damages, arguing that by not calling a medical expert in this case[1] and making certain statements in the closing argument, the defendant "adopted" the opinions of the plaintiff's expert, Dr. Mauthe, specifically that the plaintiff's alleged injuries were caused by the subject accident.

The plaintiff claims that, because the defendant elected not to present an expert to contradict Dr. Mauthe, the plaintiff's evidence was uncontroverted. However, the Pennsylvania Supreme Court rejected the "proposition that the lack of an expert counter-opinion renders

---

1. The plaintiff did not address the issue of the defendant's decision not to call a medical expert in this case in her brief. However, she did not explicitly state that she was abandoning this arguement. Therefore, the court will address it here.

the first expert's opinion uncontroverted," requiring the award of a new trial. *Carroll, supra* at 681, 939 A.2d at 875. The defendant in this case had no obligation to present expert evidence to defeat the plaintiff's claim, since a jury "may reject any evidence offered, even if uncontroverted" and "is not obligated to believe or disbelieve any evidence presented at trial, including an expert's opinion." *Id.* However, a jury cannot base its verdict on "whim or caprice," including reaching a verdict contrary to an uncontroverted issue. *Id.*

The issues of causation and injury in this case, however, were not uncontested. The defendant challenged the facts underpinning Dr. Mauthe's opinions on injury and causation during cross-examination, therefore providing grounds for the jury to reject Dr. Mauthe's opinion. For example, Dr. Mauthe acknowledged that he had only seen the plaintiff three times in the five years following the subject December 2003 accident: once in the spring of 2004, once in 2007 and once in 2008. Mauthe trial dep., 8/31/09, at pp. 37-38. Dr. Mauthe admitted that, at the time of the 2004 visit, the plaintiff only complained of "right flank pain," "under bottom rib," which she experienced "while running" that started in September 2003, four months before the subject accident. *Id.* at pp. 42-43, 50-54. Dr. Mauthe also conceded that, at the time of the April 2004 visit, the plaintiff answered "no" to all questions concerning any complaints involving her arms, including her left arm and shoulder, which were at issue in this case. *Id.* at pp. 43, 44, 46. In fact, she stated that the pain that brought her to the April 2004 visit had developed in September 2003 and that it had "nothing to do with the accident." *Id.* at pp. 50-54.

Additionally, the defendant's counsel elicited admissions from Dr. Mauthe that the plaintiff had five or six MRI studies over the course of the last several years that were all normal. *Id.* at pp. 54-55. Dr. Mauthe also conceded that there were "lots" of causes of brachial plexopathies, and that they can also be idiopathic, the result of "the nervous system attack[ing] itself," a condition that "just happen[s] on its own." *Id.* at p. 58. Dr. Mauthe stated that EMG studies had been performed and that the one abnormal EMG study he could point to, did not, in and of itself, suggest any particular cause or relate to the subject accident. *Id.* at p. 63. Finally, Dr. Mauthe conceded that the medical records he reviewed for the post-accident period documented normal neck rotation, a negative Adson's test for thoracic outlet syndrome, although a positive subjective test for the condition, normal strength, reflexes and normal findings on other tests related to thoracic outlet syndrome and bronchial plexopathy. *Id.* at pp. 64-75.

Despite the fact that the defendant elicited cross-examination testimony from Dr. Mauthe that contradicts Dr. Mauthe's causation opinion, the plaintiff argues that the defendant adopted Dr. Mauthe's opinion on the contested issues of causation or the existence of thoracic outlet or brachial plexus injury by defense counsel making a statement in closing that he was doing so. The subject statement was "I decided to go with Dr. Mauthe in this case, as the expert." N.T. 9/16/2009 at p. 105. However, a complete reading of the introductory statement by defense counsel reveals that he also stated, "I think he was more helpful to my case as opposed to the

plaintiff's case as a result of the number of questions that I asked." *Id.* Following his introductory statements regarding Dr. Mauthe, defense counsel reminded the jury of Dr. Mauthe's concessions and admissions on cross-examination, including his admission that "there was no evidence of true neuro[genic] thoracic outlet syndrome" in the plaintiff. *Id.* at p. 109. Defense counsel also asked the jury to remember that, although Dr. Mauthe suggested that the plaintiff had a brachial plexopathy, Dr. Mauthe conceded that there were many causes of brachial plexopathy, and that the condition could be idiopathic. *Id.* at pp. 109-10. Finally, counsel also read into the record more detailed admissions by Dr. Mauthe regarding the multiple causes of brachial plexopathy and the EMG study. *Id.* at pp. 113-15.

It appears clear to the court that the opinion of Dr. Mauthe was contested and that the defendant did not adopt said opinion in defense counsel's closing statement. Therefore, this motion for a new trial based on the argument that the issue of allegedly uncontested evidence is denied.

### *b. Motion for a New Trial as to Damages Only Based On the Admission of Testimony of Defense Vocational Expert, Jasen Walker Ed.D., Regarding Prior Medical Conditions*

The plaintiff argues that she is entitled to a new trial on damages on the ground that the defendant's vocational rehabilitation expert, Dr. Jasen Walker "was permitted to testify as to prior medical conditions of the plaintiff" from his review of medical records and testi-

mony and reports of the plaintiff's experts and others, when the defendant had not called a medical expert to support a "medical impairment." Plaintiff's brief in support of post-trial motion, pp. 11-13. Specifically, she challenges Dr. Walker's discussion of the plaintiff's medical records relied on by the expert, citing select pages of testimony to support this challenge. *Id.,* referring to N.T 9/15/ 2009 at pp. 161-163.

Both the plaintiff's vocational rehabilitation expert, Dr. O'Toole, and the defendant's vocational rehabilitation expert, Dr. Walker, testified that their opinions as vocational experts were based in part on facts in the medical records. Dr. Walker referred to specific facts relating to the plaintiff's medical conditions in the same manner as Dr. O'Toole, for the purpose of establishing their impact on the plaintiff's work life and earnings potential, and not in an attempt to attribute the plaintiff's alleged injuries from the December 2003 accident to other causes.

Dr. Walker offered opinions, based on his testing and review of medical records and testimony and reports of the plaintiff's experts that contradicted those of Dr. O'Toole. See *e.g.* N.T.,9/15/2009 at pp. 180-93. In support of her motion, the plaintiff references the pages of the transcript in which Dr. Walker summarized medical records that documented the plaintiff's longstanding history of migraine headaches that periodically required her to miss work for days at a time, "problems with neck pain" that had required physical therapy, sleep apnea, irritable bowel syndrome and the plaintiff's testimony that she had missed work during 2003 and 2004 for treatment of hemangiomas and cysts on her liver that led to

her leaving her employment. *Id.* at pp. 161-63. He also discussed a peroneal nerve problem in her lower leg that arose before the accident. *Id.* at p. 163.

Dr. O'Toole, the plaintiff's vocational expert, testified concerning his "comprehensive vocational assessment" and that he offered opinions on earning capacity as a vocational expert, discussing the same medical issues, and based on the same medical records, as Dr. Walker and admitting that his assessment relied on the plaintiff's medical records. N.T. 9/11/2009 at pp. 205-207, 247.

Under Pa.R.E. 703, an expert is permitted to express opinions that are based in part on materials that are not in evidence, but that are customarily relied upon by experts in the particular field. *Beaumont v. ETL Services Inc.*, 761 A.2d 166 (Pa. Super. 2000). An expert is not only expected to discuss the factual bases for the opinions offered, but "must testify as to the facts or data on which the opinion or inference is based." Pa.R.E. 705.

Therefore, because the medical records relied upon by Dr. Walker in this case are of the type customarily relief upon by an expert in the same field, the plaintiff's argument that Dr. Walker's testimony should have been precluded because it advised the jury of unrelated medical conditions and was offered without a proper basis, is denied.

c. *Motion for New Trial as to Damages Only Based Upon the Admission of Testimony Regarding the Defendant's Prior Military Service*

The plaintiff argues that she is entitled to a new trial on damages because the defendant testified regarding

prior military service. She argues that this evidence should have been precluded on the basis of relevance and improper character evidence.

Before the defendant testified, the court denied the plaintiff's motion to preclude testimony regarding prior military service, ruling that the defendant could testify that she was in the military as part of her background, not a full explanation of her military service history, but just regarding what she was doing at the time of the motor vehicle accident. N. T. 09/09/2009 at pp. 26-27. The defendant's testimony regarding the subject, elicited at the outset of her direct examination, stayed strictly within those parameters, as follows:

"Q.: How were you employed in December 2003?

"A.: I was employed for, for Hydro for 30-some years and also in the military.

"Q.: What did you do for Hydro?

"A.: Administrative assistant. . . .

"Q.: In 2003, what was your position with the Armed Forces?

"A.: I was an administrative specialist and a transportation specialist." N.T. 09/14/2009 at p. 163.

It appears to the court that this testimony was not, as the plaintiff suggests, evidence of good character. The above testimony referencing employment in the military does not rise to the level of impermissible evidence of good character, but was merely general background in-

128

formation on a party. See *Greenberg v. Aetna Insurance Company,* 427 Pa. 494, 235 A.2d 582 (1967).

Therefore, the plaintiff's motion for a new trial based on the admission of testimony regarding the defendant's military service is denied.

> d. *Motion for a New Trial as to Damages Only Based Upon Admission of Testimony Regarding Plaintiff's Prior Motor Vehicle Accidents And Injuries Sustained Therein*

The plaintiff did not address this issue in her brief. After review of the trial transcript, it appears to the court that this omission was intentional, as the issue appears moot. However, if the plaintiff did intend to preserve this issue, the motion based on these grounds is denied.

## III. CONCLUSION

In conclusion, for all of the reasons stated above, the motion for post-trial relief of plaintiff, Karen Denisco, is denied.

## ORDER

And now March 1, 2010, upon consideration of the motion for post-trial relief of plaintiff, Karen Denisco, filed on September 24, 2009 and the defendant's response thereto and after agument thereon;

It is hereby ordered that, for the reasons set forth in the accompanying memorandum opinion, said motion is denied.