J-A06044-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| KAYLA M. SUPANCIK, AN INCAPACITED PERSON, BY ELIZABETH SUPANCIK, PLENARY GUARDIAN OF THE PERSON AND ESTATE, AND APRIL SUPANCIK, INDIVIDUALLY | : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : | No. 295 MDA 2018 |
| TYLER M. ROBINSON | : : | |
| Appellant | : | |

Appeal from the Order Entered January 29, 2018
In the Court of Common Pleas of Susquehanna County Civil Division at
No(s): 2011-374

| | | |
|---|---|---|
| KAYLA M. SUPANCIK, AN INCAPACITED PERSON, BY ELIZABETH SUPANCIK, PLENARY GUARDIAN OF THE PERSON AND ESTATE, AND APRIL SUPANCIK, INDIVIDUALLY | : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : | |
| | : | No. 358 MDA 2018 |
| v. | : : : | |
| TYLER M. ROBINSON | : : : : | |

Appeal from the Order Entered January 19, 2018
In the Court of Common Pleas of Susquehanna County Civil Division at
No(s): 2011-374

BEFORE:   OTT, J., NICHOLS, J., and PELLEGRINI*, J.

MEMORANDUM BY PELLEGRINI, J.:                    **FILED APRIL 05, 2019**

_____

*   Retired Senior Judge assigned to the Superior Court.

All parties in this appeal[1] seek review of an order entered in the Court of Common Pleas of Susquehanna County which grants a new trial in their vehicular negligence action. The central claims of the plaintiffs below (the Supanciks) are that the trial court erred in (a) setting aside the jury's verdict that the defendant, Tyler Robinson (Robinson), was negligent and (b) denying their post-trial motions to prevail on the issue of liability as a matter of law. Conversely, Robinson argues, *inter alia*, that the trial court erred in setting aside the jury's verdict as to factual cause and ordering that the case be entirely retried. We affirm the trial court's rulings in all respects.

**I.**

**A.**

The undisputed facts of the subject auto accident are set forth in the trial court's opinion:

> On June 9, 2009, [Robinson] was operating his motor vehicle on State Route 92 (SR 92)[.] [He] was traveling in the south bound lane of SR 92. There were no adverse, environmental or road conditions. At some time near dusk, as Robinson was operating his motor vehicle, he observed [Kayla Supancik] and her father, Peter Supancik . . . stepping over a guardrail off the northerly side of SR 92, which would have been to the left side of SR 92 in

---

[1] Robinson filed a notice of appeal on February 14, 2018, in case 295 MDA 2018. The Supanciks filed a notice of appeal on February 26, 2018, in case 358 MDA 2018. The two appeals were consolidated in accordance with Pennsylvania Rule of Appellate Procedure 2136, which governs cross appeals. For the purposes of the briefing schedule, the Supanciks were deemed the "Appellants" and Robinson was deemed the "Appellee." To avoid confusion, the parties will be referred to here by name.

Robinson's field of vision. [Kayla] was 9 years of age at the time of the accident.

When first observed by Robinson, [Kayla and Peter Supancik] were approximately 400 to 500 feet away from Robinson's oncoming motor vehicle. [Kayla and Peter] were standing very close to the roadway surface of SR 92. While not immediately apparent to Robinson, [Kayla's] little sister was standing across the road from [Kayla and her father]. Robinson was eventually able to observe what he described as a 2 to 3-year-old child [Kayla's sister] standing unaccompanied in her driveway and in close proximity to the southbound lane of SR 92, which would have been to the right of Robinson's field of vision. Upon observing [Kayla and her father], Robinson slowed his vehicle down to 35 or 40 miles per hour.

Robinson estimated that he continued to watch [them] for another 8 to 10 seconds as he approached them at his reduced speed. When Robinson's vehicle was approximately 70 to 100 feet from [Kayla and her father, Kayla] left her position near the guardrail off the eastern side of SR 92, cross through the northbound lane of SR 92, and entered the southbound lane of SR 92 into the path of Robinson's motor vehicle. Robinson attempted to brake but was unable to avoid striking [Kayla] with his motor vehicle.

Robinson attempted to veer his motor vehicle to the right but could not take further evasive action without striking [Kayla's] little sister who was standing close to the roadway in a driveway area to the westerly side of SR 92. Based upon expert reports, it was determined that Robinson was traveling 40 miles per hour prior to braking.

It was further determined that if Robinson had been traveling 32 miles per hour, then [Kayla] would have been able to run safely across the road without being struck by Robinson's breaking motor vehicle. It was also determined that if Robinson had slowed to 20 miles per hour he would have been able to successfully break prior to the point of impact with [Kayla].

Trial Court Opinion, 01/19/18, at 1-2.

At the close of evidence after a five-day trial, the jury was instructed to determine whether Robinson was "negligent." Neither party objected to the following jury instructions on negligence:

A person must act in a reasonably careful manner to avoid injuring others.

The care required varies according to the circumstances and the degree of danger at a particular time.

A driver owes a duty of care to a pedestrian who is attempting to cross a public highway. Likewise, a pedestrian has a duty to exercise reasonable care prior to attempting to cross a highway.

As to a child pedestrian, a driver has a higher standard of care and is required to give due consideration to the fact that a child does not ordinarily exercise the same degree of caution for their (sic) own safety that an adult pedestrian normally would.

**The degree of care owed to a child pedestrian is determined by the following factors:**

(1) Whether the child when first observed was located in a place of danger or a place of safety;

(2) If the child was in a place of danger, whether the driver had sufficient time to observe the child and react to the situation so as to avoid striking the child;

(3) If when first observed the child was in a place of safety, whether there was a reasonable apprehension that the child might run into a place of danger; and

(4) If there was a reasonable apprehension that the child might run from a place of safety into a place of danger, whether the driver had sufficient time to observe the child and react to the situation so as to avoid striking the child.

The driver of a motor vehicle is not an insurer of the safety of a child. If a child should come suddenly into the path of the motor vehicle without warning so that an attentive driver who is

exercising due care under the circumstances could not have avoided the collision, then the driver **is not negligent.**

**If the driver of a motor vehicle has sufficient time to observe a child in a place of danger so as to allow the driver who is exercising due care a reasonable opportunity to avoid striking the child, then the driver *is negligent*.**

If the driver of a motor vehicle observes a child in a place of safety and there is a reasonable apprehension that the child will enter a place of danger, but there is not sufficient time to observe the child so as to allow the driver who is exercising due care a reasonable opportunity to avoid striking the child, then the driver *is not negligent*.

**If the driver of a motor vehicle observes a child in a place of safety and there is a reasonable apprehension that the child will enter a place of danger, and there is sufficient time to observe the child so as to allow the driver who is exercising due care a reasonable opportunity to avoid striking the child, then the driver *is negligent*.**

Where there is a reasonable apprehension that a child will leave a place of safety and enter a place of danger, a driver has a duty to bring his or her motor vehicle under such control that it can be stopped on the shortest possible notice of danger.

**You must decide how a reasonably careful person would act under the circumstances established by the evidence in this case**.

A person who does something a reasonably careful person would not do under the circumstances *is negligent*.

A person also *can be negligent* by failing to act.

A person who fails to do something a reasonably careful person would do under the circumstances *is negligent*.

Trial Transcript, 10/17/17, at 200-02 (emphases added).

The corresponding interrogatory on the jury's verdict slip asked whether

Robinson was negligent. The jury eventually determined that he **was**. What

came next is the crux of this appeal – the jury **also** found that Robinson's

negligent conduct was **not** a "factual cause" of Kayla's injuries.

The instructions given to the jury on "factual cause" had considerable

overlap with those in the negligence charge:

> In order for Kayla . . . to recover in this case . . . Robinson's negligent conduct must have been a factual cause in bringing about harm. **Conduct is a factual cause of the harm when the harm would not have occurred absent the conduct. To be a factual cause, the conduct must have been an actual, real factor in causing the harm, even if the result is unusual or unexpected**. **A factual cause cannot be an imaginary or fanciful factor having no connection or only an insignificant connection with the harm**.
>
> To be a factual cause . . . Robinson's conduct need not be the only factual cause. The fact that some other causes concur with . . . Robinson's negligence in producing an injury does not relieve [him] from liability as long as his own negligence is a factual cause of the injury.

Trial Transcript, 10/17/17, at 202 (emphases added).

By finding that Robinson's negligence was not the factual cause of

Kayla's injuries, the jury did not impose any damages. It also did not answer

the remaining questions on the verdict slip, including whether Kayla was

contributorily negligent.

**B.**

The Supanciks moved for a directed verdict and judgment notwithstanding the verdict (JNOV)[2] as to factual cause. They argued that they were entitled to a new trial as to damages alone, with liability decided in their favor because the verdict on factual cause was against the weight of the evidence, inconsistent with the negligence verdict, and the result of jury confusion. The Supanciks asserted that even though the jury never decided the issue of Kayla's contributory negligence, they should still have won a verdict on factual cause as a matter of law. In the alternative, the Supanciks moved for a new trial on all issues.

As the prevailing party, Robinson contended that the negligence and factual cause portions of the verdict were consistent and supported by the evidence. He interpreted the verdict as a reflection of the jury's intent to find him not liable. However, the trial court set aside the verdict of no factual

---

[2] JNOV is only proper in two situations. First, the movant may be entitled to it if a court reviews the record and concludes that the law requires a verdict in his favor, even when resolving all factual inferences against him; second, the court may review the record evidence and find that a verdict for the movant was "beyond peradventure." **Mirizio v. Joseph**, 4 A.3d 1073, 1079 (Pa. Super. 2010). This standard is intended to prohibit courts from deciding a disputed issue of material fact. **See Renninger v. A & R Machine Shop**, 163 A.3d 988, 995 (Pa. Super. 2017). Further, a new trial as to liability should only be granted where (1) the issue is not "intertwined" with the issue of damages, and (2) liability has been "fairly determined" or is "free from doubt." **Kraner v. Kraner**, 841 A.2d 141, 147 (Pa. Super. 2004) (citing **Kiser v. Schulte**, 648 A.2d 1, 8 (Pa. 1994)).

cause. It reasoned that where "there is no dispute that an accident caused physical injury to a plaintiff and the jury concludes that the defendant was negligent, then the weight of the evidence requires a finding that the defendant's negligence was the factual cause of the plaintiff's injuries." Trial Court Opinion, 01/19/18, at 10-11.

The trial court also denied the Supanciks' motions for JNOV and directed verdict, which was based on their contention that the negligence finding determined that Robinson's conduct was a factual cause of the accident as a matter of law. The trial court instead set aside the finding of negligence due to "serious questions as to how the verdict was reached." *Id*. at 14-15.

The trial court explained that during deliberations, the jury had repeatedly asked about the definition of negligence. At one point, the jury even sent a note indicating that it was deadlocked. It was only after the trial court ordered the jury to continue deliberating that it found Robinson negligent. The trial court determined that the jury's decision to find Robinson negligent but not a factual cause had to be a "compromise verdict." **Id.** at 14. Because the verdict was inconsistent, the trial court ordered a new trial:

> Given that the record fails to disclose that the verdict was "fairly determined" and "free from doubt," and where the record actually raises serious questions as to how the verdict was reached, this court cannot enter JNOV as to the liability question. Instead, the matter will proceed to a new trial on all issues.

*Id.* at 14-15.[3]  Both the Supanciks and Robinson appealed.[4]

## II.

The parties in this case offer conflicting interpretations of the jury's verdict that Robinson was negligent but that his negligence was not the factual cause of Kayla's injuries.  The heart of Robinson's argument is that he could have been both negligent and not the factual cause of the accident if another party had been completely responsible.  He asserts that he could have driven negligently without his conduct being a legal cause of the accident.

The Supanciks argue that the jury necessarily determined Robinson's liability in its negligence verdict making the separate verdict on factual cause superfluous.  In short, the Supanciks and Robinson each claim that the respective verdicts in their favor must take precedence over the other.

The instructions and verdict slips provided to the jury in this case are central to the disposition of the present appeal.  ***See Maya v. Johnson &***

---

[3] "Trial courts have broad discretion to grant or deny a new trial." ***Harman ex rel. Harman v. Borah***, 756 A.2d 1116, 1121–22 (Pa. 2000). Circumstances which justify the exercise of this discretion include when "the original trial, because of taint, unfairness or error, produces something other than a just and fair result, which, after all, is the primary goal of all legal proceedings." ***Id.***

[4] The trial court also denied the Supanciks' related post-trial claims that Robinson's liability should have been decided as a matter of law and that the issue of Kayla's contributory negligence should not have been presented to the jury.  The trial court also denied without prejudice Robinson's evidentiary claims, finding that they could only be addressed at the new trial.

***Johnson***, 97 A.3d 1203, 1222 (Pa. Super. 2014) ("The law presumes that the jury will follow the instructions of the court."). Here, the jury was instructed in part that a driver of a motor vehicle "is negligent" when:

- [He has] sufficient time to observe a child in a place of danger so as to allow the driver who is exercising due care a reasonable opportunity to avoid striking the child[.]

- [He] observes a child in a place of safety and there is a reasonable apprehension that the child will enter a place of danger, and there is sufficient time to observe the child so as to allow the driver who is exercising due care a reasonable opportunity to avoid striking the child[.]

Trial Transcript, 10/17/17, at 200-02. Further, the jury had to decide whether Robinson was negligent based on "the circumstances established by the evidence in this case." ***Id***. The parties did not dispute that all of Kayla's injuries resulted from an accident involving a vehicle operated by Robinson.

The jury marked down Robinson as negligent in the verdict slip. As framed by the wording of the above instructions, the jury found that Robinson had a chance to avoid striking Kayla with his vehicle, ***but did strike her because he failed to exercise due care***. However, the jury was also given a separate charge on factual cause which instructed that the element is satisfied if "the harm would not have occurred absent the conduct," and "the conduct [was] an actual, real factor in causing the harm." ***Id***. at 202. The jury's finding that Robinson was not the factual cause cannot be reconciled with its finding that his negligent driving caused the accident.

The instructions and the jury's understandable confusion resulted in an inconsistent verdict as to liability. The trial court could not decide that issue in favor of either party because "a substantial conflict" existed and the trial court would have abused its discretion by settling that jury question in the absence of an adequate verdict. In light of the jury's inconsistent findings, the trial court granted the only remedy it could, an entirely new trial.[5] *Gagliano v. Ditzler*, 263 A.2d 319, 320 (Pa. 1970) (affirming order granting a new trial in a negligence action because liability was in dispute and "an apparently inadequate verdict was returned.").[6]

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/05/2019

---

[5] Robinson argues that since the Supanciks agreed to the instructions and verdict slips provided to the jury, they were estopped from seeking to set aside the factual cause verdict. However, the Supanciks clearly sought to establish Robinson's liability as a matter of law throughout the trial proceedings and on appeal. The Supanciks did not acquiesce to an inconsistent verdict by agreeing to instructions and verdict slips which made that result possible.

[6] Because we affirm the trial court's order granting a new trial, we need not reach the other issues the parties raise in support of their respective appeals.