**Bodon-Soto v. Cohen**

C.P. of Monroe County, no. 707 CIVIL 2007.

*David J. Williamson,* for plaintiff.
*Edwin A. Abrahamsen Jr.,* for defendant.

MILLER, *J.,* October 28, 2010—In this personal injury case, Arlene Cohen ("defendant") requests this court to enter judgment notwithstanding the verdict, or in the alternative, a new trial following a jury verdict in favor of Lydia Bodon-Soto ("plaintiff") in the amount of $150,000.00.

On June 23, 2005, plaintiff leased a home, beginning on July 1, 2005, located in Pocono Country Place, Tobyhanna from defendant. [Notes of testimony, June 8, 2010, at p. 32-33] (hereinafter "N.T.") After plaintiff experienced difficulties breathing [N.T. p. 116], mold was discovered in the home. [N.T. p. 121, 123] Plaintiff vacated the premises and presented to Pocono Medical Center with bronchitis. Plaintiff was admitted to and remained in the hospital for several days. [N.T. p. 122] Upon discharge from the hospital plaintiff never returned to the home. [N.T. p.122] Plaintiff then brought this personal injury claim against defendant, her landlord.

In her post-trial motions, defendant requests this court to enter judgment notwithstanding the verdict (JNOV) in her favor. There are two bases upon which a court can enter judgment notwithstanding the verdict: one, the movant is entitled to judgment as a matter of law, or two, the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. *Foster v. Maritrans, Inc.,* 790

A.2d 328, 330-331 (Pa. Super. 2002) (citation omitted). The evidence is viewed "in the light most favorable to the verdict winner, granting that party the benefit of all reasonable inferences." *Juliano v. Johns-Manville Corp.,* 611 A.2d 238, 239 (Pa. Super. 1992) (citation omitted). A judgment notwithstanding the verdict should be entered only in clear cases, and all doubt should be resolved in favor of the verdict winner. *Pencil v. Buchart,* 551 A.2d 302, 305 (Pa. Super. 1988). For a motion for judgment notwithstanding the verdict, the judge's appraisement of the evidence is not to be based on how she would have voted had she been a member of the jury, but on the facts as they come through the sieve of the jury's deliberations. *Foster,* supra at 331 (citation omitted).

In support of her request for JNOV, defendant contends that there was no proof of causation as to plaintiff's injury. In addition, defendant argues that there are no regulatory standards which establish an injury-causing level of mold within a residence, and, accordingly, plaintiff's cause of action must fail.

Defendant argues that plaintiff's fact witness, Steven Wallace of ServPro, had no formal training and should not have testified about mold he viewed in the home six months prior to plaintiff's occupancy. A review of the trial transcript demonstrates that Mr. Wallace was not qualified as an expert witness. As a fact witness, he testified as to his observations in the home. Mr. Wallace testified that he did not take any mold samples nor was he trained to take samples of any mold. [N.T. p. 29] The jury was free to accept or reject his testimony as with any fact witness.

Defendant also objected to certain evidence that was introduced at the time of trial. Plaintiff presented the testimony of Jeremy Young from Pocono Environmental Laboratories. Mr. Young testified about testing completed in the home [N.T., p. 198-199], including five (5) minute air tests. [N.T., p. 201] Both air samples and swab tests were completed in the home. [N.T., p. 198] These tests showed unacceptable levels of Aspergillus/Penicillium mold found in the living room. [N.T., p. 200] The level of mold found was 1,748 count per meter cubed. [N.T., p. 200] Mr. Young testified that any number over 500 in an indoor space is considered hazardous. [N.T., p. 200]

In rebuttal, defendant's expert, Harry M. Neill, from 1Source safety and health, testified about the methodologies used by Pocono Environmental Laboratories while testing for mold in the home. [N.T., p. 232] Although Mr. Neill did not disagree with Pocono's methodology, he said that he would have taken multiple five-minute samples to characterize "an exposure to any significant degree." [N.T., p. 232] Both experts confirmed that in Pennsylvania, there are no guidelines regarding maximum exposure limits for mold.

Regarding causation, defendant disputed that Dr. Joel Laury could opine, within a reasonable degree of medical certainty, that plaintiff had an allergy to a certain type of mold where plaintiff presented no generally accepted scientific evidence of unacceptable levels of mold exposure within a home. In support of her contention, defendant relies on the case of *Grady v. Frito-Lay, Inc.*, 576 Pa. 546, 839 A.2d 1038 (2003). In *Grady*, a consumer brought a products liability action against a tortilla chip manufacturer

after suffering an esophageal tear. In deciding whether to exclude an expert witnesses' testimony, the Pennsylvania Supreme Court cited the *Frye* test[1], which was adopted in Pennsylvania in the case of *Com. V. Topa*, 471 Pa. 223, 369 A.2d 1277 (1977). Under the *Frye* test, scientific evidence "is admissible if the methodology that underlies the evidence has general acceptance in the relevant scientific community." *Grady*, 576 Pa. at 555, 839 A.2d at 1044. (citation omitted). This test is used to help courts determine when scientific evidence is reliable and should be admitted into evidence.

We are mindful, however, that the admission of expert testimony lies within the discretion of the trial court. *Blum v. Merrell Dow Pharmaceuticals, Inc.*, 705 A.2d 1314, 1319 (Pa. Super. 1997) (citation omitted). Pa. R.E. 702 defines the proper occasion for admitting expert testimony.

If scientific, technical or other specialized knowledge beyond that possessed by a layperson will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise. In *Miller v. Brass Rail Tavern, Inc.*, 541 Pa. 474, 480-481, 664 A.2d 525, 528 (1995), the Supreme Court stated that [t]he standard for qualifications of an expert witness is a liberal one. The test to be applied when qualifying an expert witness is whether the witness has any reasonable pretension to specialized knowledge on the subject under investigation. If he does, he may testify

---

1 See *Frye v. United States*, 54 App. D.C. 46, 293 F. 1013 (1923).

and the weight to be given to such testimony is for the trier of fact to determine. It is also well established that a witness may be qualified to render an expert opinion based on training and experience. (citations omitted) (emphasis in original)

The court, under this liberal framework, admitted Dr. Joel Laury to testify as an expert witness.

Defendant claims that plaintiff offered no proof to establish the link between her exposure to a certain amount of mold and any resulting health problems to establish a right to recovery. Defendant argues that the *Frye* test requires plaintiff to prove that the scientific community generally accepts the premise that plaintiff's illness could have been caused by exposure to the type and amount of mold presented in this case. Defendant contends that since plaintiff presented no testimony regarding generally accepted amounts of mold, the types of mold that can exist safely, or that a particular level of mold is harmful, plaintiff's case must fail.

We find that defendant fails to appreciate that it is the admissibility of a scientific principle and not the conclusion based on that principle which is governed by *Frye*. The *Frye* test governs the admissibility of testimonial evidence, not the conclusion to be drawn therefrom. At trial Dr. Laury testified that the measurements taken by Pocono Environmental Laboratories were significant and revealed no evidence of any outdoor Aspergillus or Pentium Penicillium mold species. [Notes of Videotape Testimony of Joel Jerome Laury, M.D., June 2, 2010, (Video N.T.) p.25-26] He noted the levels

inside the home of Aspergillus or Penicillium species was 1,748 counts per cubic meter. [Video N.T., p. 26] It was reasonable for him to conclude that plaintiff was breathing these species inside the home and not outside the home, where no species were found. [Video N.T., p. 25-26] Dr. Laury concluded, within a reasonable degree of medical certainty, that plaintiff's asthma exacerbation was due to her exposure in the home to allergens. [Video N.T., p. 29-30] This testimony, accepted by the jury, was sufficient to justify a finding that plaintiff presented enough evidence to link plaintiff's exposure to the mold and her subsequent illness.

As stated above, the *Frye* test governs the admissibility of the testimonial evidence, not Dr. Laury's conclusions. If defendant wanted to challenge the admissibility of Dr. Laury's testimony under *Frye*, she should have requested a *Frye* hearing before trial. At the hearing, defendant would have been free to argue that the proposed testimony of Dr. Laury was not generally accepted within the scientific community. Defendant did not request this hearing and, in fact, offered testimony that relied on the same scientific principles he now claims are not generally accepted. Defendant's expert testified that Pocono Environmental Laboratories did not identify Aspergillus fumigatus in its report which was the basis for Dr. Laury's expert medical opinion. [N.T., p. 240] However, he further stated that a finding of Aspergillus could include Aspergillus fumigates. [N.T., p. 240] The experts reached opposite conclusions regarding the mold found in plaintiff's home, and the jury was free to consider the proper weight to give to the conclusion set forth by each expert.

We find nothing in the transcript or record to undermine our previous decision to admit Dr. Laury as a causation expert under the *Frye* test. In viewing the evidence in the light most favorable to the plaintiff as the verdict winner, and giving her the benefit of all reasonable inferences, we do not believe that two reasonable minds could disagree with the verdict as rendered. The defendant's request for judgment notwithstanding the verdict is denied.

Next, defendant requests a new trial because the evidence favored a finding in her favor. She argues that the only conflicting evidence at trial was the contradictory testimony of Dr. Laury and Mr. Neill. Additionally, since there was no testimony contradicting the efforts defendant took to remediate the mold in the home prior to plaintiff's occupancy, no evidence of a breach of the standard of care, or that there was mold causing plaintiff's symptoms, Defendant argues there was insufficient evidence to find defendant negligent.

Our Superior Court has outlined the standard of review in determining whether a verdict is against the weight of the evidence:

A new trial based on the weight of the evidence issues will not be granted unless the verdict is so contrary to the evidence as to shock one's sense of justice; a mere conflict in testimony will not suffice as grounds for a new trial. Upon review, the test is not whether this court would have reached the same result on the evidence presented, but, rather, after due consideration of the evidence found credible by the jury, and viewing the evidence in the light most favorable to the verdict

winner, whether the court could reasonably have reached its conclusion. Our standard of review in denying a motion for a new trial is to decide whether the trial court committed an error of law which controlled the outcome of the case or committed an abuse of discretion. *Winschel v. Jain*, 925 A.2d 782, 788 (Pa. Super. 2007). (quotation and citation omitted)

At trial, Steven Wallace testified as a fact witness regarding the mold in the home at the end of October 2006. [N.T., p. 29] Defendant testified that she hired Mr. Wallace to come out to look at the mold on her property. [N.T., p. 36] Mr. Wallace sent a letter to defendant and stated that he observed mold at the floor level up to as high as four feet. [N.T., p. 36] Defendant also testified about the steps taken to remove the mold. [N.T., p. 36-39] Mary Czekaj-Builusc, defendant's realtor, testified she was in and out of the home and told defendant about an issue of mold in one closet. [N.T., p. 217] However, she did not notice any odd smells or other problems in the home. [N.T., p. 218]

The court instructed the jury to weigh the evidence in accordance with the preponderance of the evidence standard and gave them the standard instruction regarding negligence. In weighing the evidence, we also instructed the jury to determine the credibility of each witness. In a negligence case, as in other actions, the jury is charged with fact finding and credibility assessments. *Winschel*, supra at 788. The fact finder is free to accept or reject the credibility of both expert and lay witnesses, and to believe all, part or none of the evidence. *Nemirovsky v. Nemirovsky*, 776 A.2d 988 (Pa. Super. 2001). The jury is entitled to reject any and all evidence up until the point at

which the verdict is so disproportionate to the uncontested evidence as to defy common sense and logic. *Neison v. Hines*, 539 Pa. 516, 521, 653 A.2d 634, 637(1995).

The jury listened to the evidence and carefully deliberated before reaching their verdict. Based on the evidence presented, the jury acted well within its purview in determining the facts in this matter, including the credibility of the witnesses. We do not find the jury's verdict shocked our sense of justice.

Finally, defendant requests a new trial because the jury verdict was erroneously assessed or excessive. In Pennsylvania, "[i]t is well settled that the grant of a new trial is a matter within the discretion of the trial court." *Kiser v. Schulte*, 538 Pa. 219, 225, 648 A.2d 1, 3 (Pa. 1994) (citations omitted). "A jury verdict is set aside as inadequate when it appears to have been the product of passion, prejudice, partiality, or corruption, or where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff." *Kiser*, supra 538 at 225, 648 A.2d at 4 (citations omitted). A jury's verdict will be deemed inadequate and a new trial ordered where it "is so contrary to the evidence as to 'shock one's sense of justice...'" *Id.* "It is the province of the jury to assess the worth of the testimony and to accept or reject the estimates given by the witnesses." *Id.* "If the verdict bears a reasonable resemblance to the proven damages, it is not the function of the court to substitute its judgment for the jury's." *Id.* (citation omitted)

Instantly, defendant argues that the jury was clearly

confused on the measure of damages. She contends that the jury requested guidance from the court regarding damages and the inquiry and resulting award demonstrate that the jury did not grasp how to measure and award damages. Plaintiff complained of difficulty breathing and shortness of breath. [N.T., p. 116] She was admitted to the hospital for "about a week." [N.T., p. 122] Dr. Laury testified that plaintiff suffered an asthma exacerbation which caused plaintiff to end up in the hospital with "potentially life-threatening asthma exacerbation." [Video N.T., p. 27] While the jury may have requested guidance on the assessment of damages, we will not substitute our judgment on damages for that of the jury's. Based on the evidence presented, we cannot say the jury's verdict shocked our sense of justice. While it may have been a high award for this county, the jury was free to determine the amount of damages. Consequently, we deny defendant's motion for post trial relief.

In light of the foregoing, we enter the following order:

## ORDER

And now, October 28, 2010, defendant Arlene Cohen's motion for post-trial relief is denied.