J-A24008-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| NANCY ROSENBERG, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF NEIL LIPSCHUTZ, DECEASED | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : : | |
| v. | : : : | No. 2717 EDA 2023 |
| UNITED FINANCIAL CASUALTY COMPANY, ERIC FONNER AND FONNER INSURANCE ASSOCIATES, HATIM RAMADAN AND NOHAD RAMADAN | : : : : : : | |

Appeal from the Judgment Entered October 17, 2023
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 210101684

BEFORE: LAZARUS, P.J., KING, J., and LANE, J.

MEMORANDUM BY LAZARUS, P.J.:         **FILED APRIL 10, 2025**

Nancy Rosenberg (Plaintiff),[1] individually and as Administrator of the Estate of Neil Lipschutz, Deceased, appeals from the judgment, entered in the Court of Common Pleas of Philadelphia County, against Fonner Insurance Associates and Eric Fonner (collectively, Fonner Defendants) in the amount of $456,250.00 after the court denied her post-trial motion seeking judgment notwithstanding the verdict (JNOV) and/or additur, as well as delay damages. After careful review, we affirm.

_____

[1] Plaintiff was married to Decedent at the time of his death.

On November 26, 2019, Decedent was fatally injured as he walked along the sidewalk on Township Line Road in Abington, Montgomery County, and was struck by a motor vehicle driven by Hatim Ramadan, in which Nohad Ramadan was a passenger. Following the accident, Plaintiff made a claim upon the Ramadans and their insurer, Root Insurance Company (Root), seeking damages. In response, Root tendered its policy limits of $25,000.00.

At the time of the accident, Decedent had personal motor vehicle insurance coverage (personal policy) through Progressive Insurance Company (Progressive). The personal policy had $275,000.00 in underinsured motorist (UIM) coverage. Progressive had also issued a commercial auto policy (commercial policy) to Decedent's business, J.D. Matthews, LLC (business). The business was the named insured on the commercial policy and Decedent was listed as a "Rated driver" on the commercial policy. The commercial policy was sold to Decedent and his business by the Fonner Defendants and had a $1 million UIM limit[2] for a Mazda Miata.[3] The Miata was titled and registered as a corporate vehicle for the business.

Plaintiff advised Progressive that she intended to proceed under the UIM provisions of both the personal and commercial automobile policies. In response, on April 29, 2020, Progressive sent Plaintiff a letter advising that

_____

[2] Decedent waived stacked UIM limits under the commercial policy as well as the personal policy.

[3] Both policies were issued by United Financial Casualty Company (UFCC), d/b/a Progressive insurance Company.

the $1 million limit from the commercial policy was not available to her because Decedent was not occupying an insured vehicle at the time of the accident and Decedent did not have pedestrian coverage under the commercial policy.

On January 26, 2021, Plaintiff filed a complaint against Progressive and the Fonner Defendants, alleging professional negligence and vicarious liability.[4] Plaintiff alleged that, due to their existing business relationship and the fact that Decedent's personal policy covered pedestrian accidents, the Fonner Defendants knew or should have known to recommend that Decedent include pedestrian coverage in the commercial policy.

Plaintiff filed an amended complaint on April 6, 2021, asserting the above-stated claims, as well as additional claims for breach of fiduciary duty and negligent failure to train/supervise against the Fonner Defendants. The Fonner Defendants filed preliminary objections to the amended complaint. The court sustained the objections, in part, and dismissed the negligent failure to train/supervise count.[5, 6]

_____

[4] The complaint also alleged counts of wrongful death and survival against the Ramadans. Nohad Ramadan was dismissed from the case, without prejudice, prior to trial. *See* Pa.R.C.P. 229(b). The jury returned a verdict against Hatim Ramadan in the amount of $10,000.00. He is not a party to the instant appeal.

[5] On November 8, 2022, the parties stipulated to discontinue the action against Progressive.

[6] On November 8, 2022, Fonner Defendants filed a motion for summary judgment. On December 15, 2022, the court granted the motion, with
*(Footnote Continued Next Page)*

- 3 -

Prior to trial, the parties stipulated that "in the event the jury enters a verdict in favor of [P]laintiff, and against [Fonner D]efendants[,] and the verdict amount is in excess of $1 [million], the verdict will be molded to $1

_____

prejudice, "as Plaintiff failed to answer and[,] therefore, this motion is uncontested." Order, 12/15/22. Plaintiff moved for reconsideration of the order granting the Fonner Defendants' motion for summary judgment, alleging that "Plaintiff had every intention of timely filing her opposition to [Fonner D]efendants' motion for summary judgment . . . [but u]nfortunately, due to confusion and administrative error by [P]laintiff's counsel, the answer was not filed." Plaintiff's Motion for Reconsideration, 12/22/22, at ¶ 18. Fonner Defendants filed an answer opposing Plaintiff's motion for reconsideration. On March 1, 2023, the trial court entered an order denying Plaintiff's motion for reconsideration, concluding it lacked jurisdiction to act further in the matter. *See* Trial Court Order, 3/1/23 (indicating after 30 days from date of court's order granting summary judgment, court lacks jurisdiction to act in matter). On March 29, 2023, the trial court granted Plaintiff's motion for reconsideration, vacated its prior order granting the Fonner Defendants' summary judgment motion, and ordered Plaintiff to file a response to the Fonner Defendants' motion for summary judgment. *See* Trial Court Order, 3/29/23. Plaintiff complied and filed a response to the Fonner Defendants' motion. On March 31, 2023, the trial court entered an order denying Fonner Defendants' motion for summary judgment.

We note that "a trial court has the inherent power to reconsider its own rulings." ***Key Automotive Equip. Specialists v. Abernethy***, 636 A.2d 1126, 1128 (Pa. Super. 1994). If a trial court fails to grant a motion for reconsideration within 30 days after the motion is filed, the trial court loses jurisdiction to act on the motion. ***See Gardner v. Consolidated Rail. Corp.***, 100 A.3d 280, 283 (Pa. Super. 2014). However, the 30-day limit applies only to final orders. ***See Key Automotive Equip. Specialists***, 636 A.2d at 1128, citing 42 Pa.C.S.A. § 5505 (limiting time for modification or rescinding of final orders to within 30 days after its entry). Here, the trial court's grant of the Fonner Defendants' motion for summary judgment was an interlocutory order because it did not dismiss Defendant Ramadan from the action. ***See*** Pa.R.A.P. 341(b) (final order disposes of all claims and all parties). In other words, the order did not "effectively place [Plaintiff] out of court or otherwise end the lawsuit." ***Key Automotive Equip. Specialists***, 636 A.2d at 1128. Thus, the trial court had the authority to reconsider its ruling at that time.

[million] as to [Fonner D]efendants." Trial Stipulation Regarding Damages against Fonner Defendants, 6/22/23.

The case proceeded to a five-day jury trial, commencing on June 26, 2023. At trial, the evidence established that Decedent would have had UIM coverage under the commercial policy if he had executed a "Drive Other Car" endorsement that would have provided him protection as a pedestrian. During cross-examination, the Fonner Defendants' expert witness testified that the Fonner Defendants had, in fact, breached the standard of care for insurance brokers, which caused Plaintiff to lose the opportunity to claim the full UIM benefits available under the commercial policy, i.e., $1 million.

At the close of evidence and after the charging conference and finalizing of the jury verdict slip,[7] Plaintiff's counsel moved for a directed verdict, stating the following:

_____

[7] The verdict sheet, submitted to the jury for its deliberations, included the following questions:

**<u>VERDICT SHEET</u>**

**<u>Question 1:</u>**

Do you find the Eric Fonner or Fonner Insurance Associates were negligent?

Yes _____          No _____

If you answered "Yes" to the foregoing question, proceed to the next question. If you answered "No" to the foregoing question, proceed to Question 3.

*(Footnote Continued Next Page)*

_____

**Question 2:**

Do you find that the negligence of Eric Fonner or Fonner Insurance Associates was a factual cause of damages to Plaintiff?

Yes _____      No _____

Proceed to Question 3.

**Question 3:**

Do you find that the Fonner Defendants owed [Decedent] a fiduciary duty?

Yes _____      No _____

If you answered "Yes" to the foregoing question, proceed to Question 4.  If you answered "No" to the foregoing question, proceed to Question 6.

**Question 4:**

Do you find that the Fonner Defendants breached a fiduciary duty owed to [Decedent]?

Yes _____      No _____

If you answered "Yes" to the foregoing question, proceed to Question 5.  If you answered "No" to the foregoing question, proceed to Question 6.

**Question 5:**

Do you find that the Fonner Defendants' breach of a fiduciary duty owed to [Decedent] was a factual cause of damages to Plaintiff?

Yes _____      No _____

**Question 6:**

Was [Decedent] or JD Matthews, LLC negligent?

*(Footnote Continued Next Page)*

Your Honor, I'm going to move for a directed verdict given that their expert literally just admitted on the stand that the defendant breached the standard of care. So[,] Question 1 on the verdict sheet as to [the Fonner Defendants] should be marked as ["]yes.["] And I also asked him on cross-examination, and he admitted, that did that cost him [] to lose the **opportunity** to protect his family with a million dollars, and he said ["]yes.["]

So based on those two specific answers, admissions by the defense expert, I believe that I should be entitled to a directed verdict.

N.T. Jury Trial, 6/30/23, at 94 (emphasis added). The trial court denied the motion.

Ultimately, the jury returned a verdict in favor of Plaintiff and against the Fonner Defendants, in the amount of $456,250.00, for failure to procure proper coverage for Decedent. Plaintiff filed post-trial motions seeking a JNOV and/or additur, as well as delay damages. The trial court denied the motions.

_____

Yes _____      No _____

**Question 7:**

Was the negligence of [Decedent] or JD Matthews, LLC[,] a factual cause of damages to Plaintiff?

Yes _____      No _____

If you answered "Yes" to the foregoing question, cease deliberations and return to the courtroom. If you answered "No" to the foregoing question, proceed to Question 8.

**Question 8:**

State the amount of damages, if any, you award to Plaintiff regarding the clams against the Fonner Defendants.

$_____

Advise the court officer that you have reached a verdict.

Verdict Sheet, 7/1/23.

Plaintiff filed a timely notice of appeal. Both Plaintiff and the trial court have complied with Pa.R.A.P. 1925.

Plaintiff raises the following issues for our consideration:

(1)  Whether the trial court erred in denying [P]laintiff's motion for JNOV against the [Fonner D]efendants where the [Fonner D]efendants admitted to breaching the standard of care and their expert changed his opinion, ultimately opining not only that [the Fonner D]efendants breached the standard of care[,] but also that [the Fonner D]efendants' breach [of] the standard of care caused [P]laintiff to lose the benefit of $1 [million] in [UIM] coverage in connection with the death of [P]laintiff's husband?

(2)  Whether the trial court erred in denying [P]laintiff's motion for additur against the [Fonner D]efendants where the admitted loss caused by the [Fonner D]efendants' negligence was $1 [million] in [UIM] coverage and where the jury determined the value of [P]laintiff's claim exceeded the $1 [million] in [UIM] coverage that should have been available by more than $8 [million]?

(3)  Whether the trial court erred in rejecting [P]laintiff's requested verdict sheet and instead used a verdict sheet including a separate award of damages against the [Fonner D]efendants where the verdict against the [Fonner D]efendants was directly and legally determined by the jury's determination of the value of the claim against the third[-]party tortfeasor?

Plaintiff's Brief, at 4-5.

In her first issue, Plaintiff argues the trial court erred in denying her motion for JNOV. As a preliminary matter, Plaintiff argues that she properly preserved her right to pursue a JNOV by moving for a directed verdict during trial "as to the entirety of the claim against the Fonner [D]efendants." Brief of Appellant, at 39-40. To support her preservation argument, Plaintiff points to that portion of the trial transcript in which she moved for a directed verdict

- 8 -

based on the testimony of the Fonner Defendants' expert witness, who testified that the Fonner Defendants breached their duty of care in a way that "caused [P]laintiff to lose the opportunity to protect his family with $1,000,000[.00] in underinsured motorist coverage." *Id.* at 41, citing N.T. Jury Trial, 6/30/23, at 94.

Regarding her substantive claim, Plaintiff asserts that "the uncontroverted evidence established not only numerous breaches, but that the requested coverage to protect [P]laintiff existed and was not purchased." *Id.* at 47. This evidence includes testimony by Eric Fonner, who testified that he knew that when Decedent requested uninsured and UIM coverage for his commercial policy, he was requesting "equivalent coverages of a personal policy," and that Fonner had an obligation to explain the differences between personal and commercial auto policies. *Id.* at 48, citing N.T. Jury Trial, 6/27/23, at 99-100. Plaintiff also points to Defendants' expert witness's testimony that the Fonner Defendants breached applicable standards of care, which cost Decedent the opportunity to receive $1 million in UIM coverage. *Id.* at 46 n.1. Plaintiff further cites the testimony of David Hale, Progressive's underwriting representative, who testified that Decedent could have obtained $1 million in underinsurance coverage by "stacking" his policies. *Id.* at 49-51.

Additionally, Plaintiff argues the trial court erred by denying JNOV on the basis of the pre-trial stipulation to limit damages against the Fonner Defendants. *Id.* at 59. Plaintiff argues that the Fonner Defendants had "a

clear understanding that a single verdict should be entered[,] as they stood in the shoes of the underinsurance company." *Id.* at 60. In support of this assertion, Plaintiff quotes the Fonner Defendants' motion to bifurcate trial in which they acknowledged "economic damages sought against UFCC and [the Fonner Defendants] are capped at the [UIM] coverage limits under the commercial auto policy, $1 million [and] insurance damages sought, namely an additional capped $1 million in UIM coverage sought under the commercial auto policy of JD Matthews, LLC." *Id.* at 60. Plaintiff proffers that "[a]t the time the stipulation was entered, both parties were aware that the Fonner [D]efendants' liability was capped at the $1 [million] in [UIM] coverage that was alleged should have been procured by the Fonner [D]efendants." *Id.* at 61. Plaintiff claims that when the trial court permitted the jury to enter separate damages verdicts for the Fonner Defendants and Defendant Ramadan, it "impermissibly [] chang[ed] and extend[ed] the language of the stipulation," as "there is no language that permits the trial court to deny a motion for JNOV because there is an agreed cap on damages against the Fonner [D]efendants." *Id.* at 62-63.

Our standard of review for the denial of a motion for JNOV is plenary, as it involves a question of law. *Foster v. Maritrans, Inc.*, 790 A.2d 328, 330 (Pa. Super. 2002). This Court reviews all evidence in the light most favorable to the verdict winner. *Reott v. Asia Trend, Inc.*, 7 A.3d 830, 835 (Pa. Super. 2010). "We will reverse a trial court's grant or denial of a JNOV only when we find an abuse of discretion or an error of law that controlled the

outcome of the case." ***Corvin v. Tihansky***, 184 A.3d 986, 990 (Pa. Super. 2018). An abuse of discretion "occurs only where the trial court has reached a conclusion that overrides or misapplies the law, or when the judgment exercised is manifestly unreasonable, or is the result of partiality, prejudice, bias[,] or ill-will." ***Ball v. Bayard Pump & Tank Co.***, 67 A.3d 759, 767 (Pa. 2013).

A JNOV may be entered upon one of two bases: "one, the movant is entitled to judgment as a matter of law and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant." ***Campisi v. Acme Markets, Inc.***, 915 A.2d 117, 119 (Pa. Super. 2006). A JNOV is warranted upon the first basis if this Court "reviews the record and concludes that, even with all factual inferences decided adverse to the movant, the law nonetheless requires a verdict in [the movant's] favor." ***Id.*** A JNOV is warranted upon the second basis if this Court, after review of the evidentiary record, concludes "that a verdict for the movant was beyond peradventure." ***Id.*** "If any basis exists upon which the [jury] could have properly made its award, then we must affirm the trial court's denial of the motion for [JNOV]." ***Garced v. United Cerebral Palsy of Philadelphia and Vicinity***, 307 A.3d 103, 113-14 (Pa. Super. 2023).

However, a "party moving for JNOV must have preserved during trial the claim on which it predicates its JNOV motion." ***Kimble v. Laser Spine Institute, LLC***, 264 A.3d 782, 792 (Pa. Super. 2021), citing Pa.R.C.P. 227.1(b). The moving party may accomplish this by filing a motion for a

directed verdict referencing a particular point of contention or requesting a binding jury instruction regarding the claim. *Id.*

Under Pennsylvania law, "[a] plaintiff acquires a cause of action against his broker or agent where the broker neglects to procure insurance, or does not follow instructions, or if the policy is void or materially defective through the agent's fault." ***Laventhol & Horwath v. Dependable Ins. Assocs.***, 579 A.2d 388, 391 (Pa. Super. 1990). If such fault arises, the broker is "liable to the same extent as the insurer would have been liable had the insurance been properly effected." *Id.* ("[Broker], therefore, stands in the position of [the insurer] if the [insurer's] policy would have covered [insured]'s loss but for [broker's] fault."). ***See also Wisniski v. Brown & Brown Ins. Co.***, 906 A.2d 571, 578 (Pa. Super. 2006) ("An 'insurance broker' is one who acts as a middleman between the insured and the insurer[.]"). It is not disputed that the Fonner Defendants were Decedent's insurance brokers.

Here, the trial court denied Plaintiff's JNOV motion on several grounds. First, the court found that Plaintiff had waived her JNOV claim. The trial court found that Plaintiff's "motion for a directed verdict did not reference the issue of whether she was entitled, by law, to a verdict of $1 [million] in the event of the Fonner Defendants' negligence." Trial Court Opinion, 1/22/24, at 7. Instead, "[h]er motion was limited to the issue of liability on the part of the Fonner Defendants," an issue that the trial court found to be "different from that raised in her post-trial motion" for JNOV. *Id.* at 7-8. Additionally, the trial court found that Plaintiff "failed at any point during the trial to request a

binding jury instruction on the issue of the particular damages owed by the Fonner Defendants." *Id.* at 8. Consequently, the trial court found that Plaintiff failed to preserve her post-trial JNOV claim.

Additionally, the trial court noted that a "stipulation on damages becomes the 'law of the case' on the issue of damages and that the parties become bound by its terms." *Id.*, citing **Foley Bros. v. Com. Dep't. of Highways**, 163 A.2d 80, 83 (Pa. 1960). Before trial, the parties stipulated that a verdict against the Fonner Defendants that **exceeded** $1 million would be molded to $1 million. *See* Trial Stipulation, 6/22/23. However, "[t]he stipulation here contain[ed] no prohibition on the jury returning a verdict against the Fonner Defendants of **less than** $1 [million]," meaning Plaintiff "effectively agreed" that the jury award "could be less than $1 [million]." Trial Court Opinion, 1/22/24, at 8 (emphasis added). The trial court, therefore, concluded that the $456,250.00 award against the Fonner Defendants was consistent with the law of the case, leaving it with "no basis . . . to interfere with the lawful determination of the jury." *Id.*

Our review of the record reveals Plaintiff did not preserve the issue of damages for her post-trial JNOV. At trial, Plaintiff moved for a directed verdict after the Fonner Defendants' expert witness testified that the Fonner Defendants breached the applicable standard of care, and that the breach cost Decedent "the opportunity to protect his family with a million dollars" of coverage. *See* N.T. Jury Trial, 6/30/23, at 40-41, 53-54, 94. That is, Plaintiff did not reference the particular point of contention—damages—in her motion

for a directed verdict. ***Kimble***, ***supra***. She instead referenced the Fonner Defendants' liability and Decedent's lost opportunity to receive up to $1 million in UIM coverage. Decedent's **lost opportunity** to receive $1 million in UIM coverage is not the same as Decedent **actually losing** $1 million in coverage. Ultimately, the particular point of contention referenced in Plaintiff's motion for a directed verdict was Decedent's opportunity to obtain insurance, not the actual loss of that coverage. ***Kimble***, ***supra***.

While Decedent may have had this opportunity had the Fonner Defendants not breached the applicable standards of care, it was disputed at trial that he would have actually received $1 million in coverage. ***Campisi***, ***supra***. Plaintiff did not present expert testimony to analyze potential coverages or claims, nor did she offer any witnesses that testified the "Drive Other Car" endorsement would have definitely provided $1 million in UIM coverage. Additionally, there was language in Decedent's commercial policy that subtracted the value of any other policies from the $1 million payout. ***See*** N.T. Jury Trial, 6/28/23, at 67-70. For instance, Decedent's commercial policy stated that it would be reduced by $250,000.00—the value of his personal policy. ***See id.*** at 79-80. There was also conflicting testimony regarding whether stacking—which would have allowed a full payout despite the existence of another insurance policy—was available under the commercial policy. ***Compare id.*** at 81-82 (Eric Fonner testifying stacking not available for commercial policy), ***with id.*** at 108 (Plaintiff's witness David Hale testifying stacking available for commercial policy). Moreover, Plaintiff did not

request a binding jury instruction regarding damages. **Kimble**, **supra**. Consequently, Plaintiff did not preserve the issue of damages for her post-trial JNOV and, accordingly, has waived it for purposes of appeal.

In her second issue, Plaintiff argues that the trial court erred in denying her motion for additur. Plaintiff notes that "additur is appropriate where there are no disputes regarding the facts, and 'a new trial could not result in a different outcome.'" Brief of Appellant, at 64, quoting **Fiorenza v. Kohn**, 577 A.2d 1384, 1386 (Pa. 1990). Plaintiff proffers that the "uncontroverted evidence, including the admissions of [the Fonner Defendants'] expert witness that the Fonner [D]efendants breached the applicable standard of care and caused [P]laintiff to lose the protection of $1 [million] in [UIM] benefits," justify the additur to amend the verdict against the Fonner Defendants from $456,250.00 to $1 million—the value of the UIM coverage that the Fonner Defendants failed to procure. Brief of Appellant, at 64-65.

The standard of review for a trial court's ruling on a motion for additur is an abuse of discretion. **Kohn**, 577 A.2d at 1386. "An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias[,] or ill will." **Mader v. Duquesne Light Company**, 241 A.3d 600, 607 (Pa. 2020). So long as the verdict is reasonably related to the damages proved, "the appellate court will not disturb the verdict merely because the damages are less than the reviewing court

might have awarded." **Slaseman v. Myers**, 455 A.2d 1213, 1215 (Pa. Super. 1983).

The trial court dismissed Plaintiff's motion for additur, finding that "it lacked the authority" to grant the motion. Trial Court Opinion, 1/22/24, at 10. The trial court noted that the instances in which it may grant a motion for additur are rare, such as when "damages are not disputed and a jury was required to fix damages to a certain amount but failed to do so." **Id.** at 9, citing **Dougherty v. McLaughlin**, 637 A.2d 1017, 1019 (Pa. Super. 1994), *abrogated on other grounds by* **Davis v. Mullen**, 773 A.2d 764 (Pa. 2001). It also noted that "in cases where the injustice of the verdict 'shines forth like a beacon,' or when the verdict 'is so contrary to the evidence as to shock one's sense of justice,' the proper remedy is to grant the aggrieved party a new trial so that the injustice may be corrected." Trial Court Opinion, 1/22/24, at 10, quoting **Kiser v. Schulte**, 648 A.2d 1, 4 (Pa. 1994). Ultimately, the court found that the value of the damages the Fonner Defendants owed was disputed at trial, and the jury was not required to return a damages verdict of $1 million against Defendants. **Id.**

As discussed above, damages were, in fact, disputed at trial. Plaintiff moved for a directed verdict as to the Fonner Defendants' breach of the standard of care, and to Decedent's lost opportunity to receive $1 million in UIM coverage. **See** N.T. Jury Trial, 6/30/23, at 40-41, 53-54, 94. Plaintiff did not, however, present expert testimony to establish that the Fonner Defendants' breach did, in fact, cost Decedent $1 million in coverage, nor did

Plaintiff establish that the coverage would have equaled $1 million. *See id.*, 6/28/23, at 67-70. Since the damage amount was disputed, the jury was not required to return a damages verdict of $1 million against the Fonner Defendants. *Dougherty*, *supra*.

Additionally, the damage award bears a reasonable relationship to the damages proved. *Slaseman*, *supra*. Again, it was not established at trial that the Fonner Defendants cost Decedent $1 million in underinsurance coverage, nor was it established that the policy would have ultimately paid out $1 million. *See* N.T. Jury Trial, 6/28/23, at 67-70 (discussing language in Decedent's policy that would reduce commercial policy by value of other policies). Thus, the inadequacy of the jury award does not shine forth like a beacon, *Kiser*, *supra*, and the trial court's denial of additur is not manifestly unreasonable. *Mader*, *supra*. Accordingly, the trial court did not err in denying Plaintiff's motion for additur.

In her third and final issue, Plaintiff argues that the trial court erred in rejecting her requested verdict sheet that included a single damages verdict for the Fonner Defendants and Ramadan. Ultimately, the trial court used its own verdict sheet, which included separate damages lines for the Fonner Defendants and Ramadan. Plaintiff concedes that she did not traditionally preserve the issue of the verdict sheet by objecting to the trial court's ruling to use a verdict sheet with separate damages lines. *See* Brief of Appellant, at 58. However, Plaintiff argues that verdict sheets are analogous to jury charges, which our Supreme Court held can be preserved if a party "make[s]

requested points for charge part of the record pursuant to Pa.R.C.P. 226(a), obtain[s] an explicit trial court ruling upon the challenged instruction, and raise[s] the issue in a post-trial motion." *Id.*, quoting *Jones v. Ott*, 191 A.3d 782, 789 (Pa. 2018) (plurality).

Generally, the standard of review for verdict sheets is an abuse of discretion. *See Hyrcza v. West Penn Allegheny Health System, Inc.*, 978 A.2d 961, 968 (Pa. Super. 2009). A trial court abuses its discretion when its pursued course "represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias, or ill will." *Rose v. Annabi*, 934 A.2d 743, 746 (Pa. Super. 2007).

The trial court found that Plaintiff did not preserve this issue for appeal because Plaintiff did not object to the court's use of the chosen verdict sheet. *See* Trial Court Opinion, 1/22/24, at 6. The trial court concluded that neither Plaintiff's proposed verdict sheet nor her argument that the Fonner Defendants "stood in the shoes of the underinsurance company" was an objection to the trial court's use of its own verdict sheet. *Id.*, citing N.T. Jury Trial, 6/28/23, at 4-8. Consequently, the court concluded that "it cannot be said that [Plaintiff] preserved the issue of the verdict sheet for appeal." *Id.*

Our review of the record reveals that Plaintiff waived her challenge to the verdict sheet. We note at the outset that the *Jones* waiver analysis argued by Plaintiff was joined only by two justices; a third justice concurred with a different waiver analysis. *See Jones*, *supra*. Therefore, the *Jones*

waiver analysis—that a party preserves an issue for appeal if it files points for charge, receives an explicit trial court ruling on the challenged instruction, and raises the issue in a post-trial motion—did not garner a majority vote and, thus, is not binding. *See Lomas v. Kravitz*, 130 A.3d 107, 123 n.11 (Pa. Super. 2015) (en banc) (clarifying plurality opinion's binding authority or precedential value does not extend beyond parties in particular case).

Before submitting the case to the jury, the trial court asked the parties if they had "any problems, slash, suggestions" with the court's proposed verdict sheet. N.T. Jury Trial, 6/29/23, at 153. Plaintiff did not object to the court's decision to include two damages lines on the verdict sheet. In fact, Plaintiff concedes that she did not object to the trial court's final order regarding the verdict sheet. *See* Brief of Appellant, at 58. Because Plaintiff did not object to the trial court's verdict sheet, she has waived this issue on appeal. *See Amato v. Bell & Gossett*, 116 A.3d 607, 625 (Pa. Super. 2015) ("Failure to raise [a timely] objection results in waiver of the underlying issue on appeal.").

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/10/2025

- 19 -